**THOMAS PAPER STOCK CO. et al. v.
BOWLES, Price Administrator.**

**No. 232.**

United States Emergency Court of Appeals.
Heard at Washington Sept. 7, 1945.

Decided Oct. 5, 1945.

LINDLEY, J., dissenting.

Before MARIS, Chief Judge, and LINDLEY and LAWS, Judges.

Jack H. Oppenheim, of Chicago, Ill. (Homer Cummings, of Washington, D. C., on the brief), for complainants.

Nathaniel L. Nathanson, Associate General Counsel, of Washington, D. C. (Richard H. Field, General Counsel, Jacob D. Hyman, Asst. General Counsel, and Josephine H. Klein, Atty., all of Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

MARIS, Chief Judge.

This complaint, which has been filed under Section 204(e) (1) of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 924(e) (1), with leave of the United States District Court for the Northern District of Illinois, properly brings to us for consideration the objection of the complainants to Section 1347.14(d) of Maximum Price Regulation No. 30, Wastepaper, which we held we had no power to consider in connection with their prior complaint filed under Section 204(a). See Thomas Paper Stock Co. v. Bowles, Em.App. 1945, 148 F.2d 831. The objection is that by virtue of the Taft Amendment, which added Subsection (j) to Section 2 of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 902(j), Section 1347.14(d) of MPR 30, which fixed the maximum price for unsorted wastepaper in terms of a specification or standard, was rendered invalid from July 16, 1943, the date of enactment of the Taft Amendment, until September 11, 1943, the date on which the Price Administrator made a formal determination that no practicable alternative thereto existed for securing effective price control with respect to such wastepaper.

So far as material Section 2(j), the Taft Amendment provides: "(j) Nothing in this Act shall be construed * * * (3) as authorizing the Administrator to standardize any commodity, unless the Administrator shall determine, with respect to such standardization, that no practicable alternative exists for securing effective price control with respect to such commodity; or (4) as authorizing any order of the Administrator fixing maximum prices for different kinds, classes, or types of a commodity which are described in terms of specifications or standards, unless such specifications or standards were, prior to such order, in general use in the trade or industry affected, or have previously been promulgated and their use lawfully required by another Government agency."

In the complainants' prior case (148 F.2d 831) we decided that clauses (3) and (4) which we have just quoted must be read together as providing three alternative situations in any one of which the Administrator is authorized to employ specifications or standards in connection with price control. We accordingly held that Section 2(j) did not operate to invalidate Section 1347.14(d) of MPR 30 merely because the specification or standard employed by that section had not previously been used by the wastepaper industry or required by another Government agency, the

two situations described in clause (4). The present case involves the effect of clause (3) upon the validity of Section 1347.14(d) of the regulation. In order to frame the precise question which is presented for decision the exact facts from which it arises must be stated.

Section 1347.14(d) of MPR 30 was issued and in force prior to the passage of the Taft Amendment. Its validity prior to the passage of that Amendment is not questioned. It made use of a specification or standard in fixing the maximum prices for unsorted wastepaper. No practicable alternative to the use of this specification or standard existed for securing effective price control with respect to such wastepaper. The Administrator expressly so determined in his supplementary statement of considerations to MPR 30 issued September 11, 1943 and the validity of his determination is not questioned by the complainants here. On the contrary they concede that by reason of it the regulation was entirely valid under Section 2(j) (3) after September 11, 1943.

■ It will be observed that the application of Section 2(j) (3) to a new price regulation issued after its enactment is not involved in this case. Nor do we have before us a regulation which uses a specification or standard where there is in fact another practicable alternative to its use for securing effective price control. The narrow question which this case presents is whether a previously valid price regulation which, because there was no practicable alternative for securing effective price control, used a specification or standard not previously used or required, was rendered invalid by subsection (j) (3) of Section 2 from the time of the enactment of that subsection until the time when the Administrator determined and recorded the fact that no such alternative to the use of the specification or standard existed. In other words, did the Taft Amendment require a prior determination by the Administrator of that fact in the case of a regulation which had been validly issued before the enactment of the Amendment and did it operate to invalidate the regulation in the interim?

We do not think that the Taft Amendment can properly be construed to have that effect. Its purpose as disclosed in clauses (3) and (4) was to prohibit the use by the Administrator of specifications and standards in all except three specified cases. These excepted cases were: (1) if specifications or standards were already in general use in the industry, (2) if their use had already been lawfully required by another Government agency, or (3) if there was no practicable alternative to their use for securing effective price control. Obviously it was not the purpose of Congress to bar the use in a regulation of a specification or standard if it could fairly be said that no practicable alternative to its use existed for securing effective price control. Under the construction urged by the complainants, however, the Taft Amendment would have the effect prior to a determination by the Administrator of invalidating an existing regulation which employed specifications or standards not theretofore used or required even though it might be perfectly clear that the regulation was within the intent of the exception to the Taft Amendment's ban because no other possible alternative for securing effective price control existed.

Such a capricious result demonstrates that the construction contended for by the complainants is unsound. It would impute to Congress the intention, in the face of the menace of inflation which confronted the country in the summer of 1943, of creating a breach in the dykes protecting the nation's price structure by an immediate wholesale invalidation of all existing regulations which employed specifications or standards not previously used or required. The result would have been that a large segment of the nation's economy would have been left wholly at the mercy of inflationary pressures during the period of time required by the Administrator to review the regulations and the situation of each industry concerned and to ascertain in each case whether any practicable alternatives for securing effective price control existed. In the light of the Congressional direction to stabilize prices which had been given to the President by the Stabilization Act passed only nine months previously and in view of the grave danger of inflation which confronted the country when the Taft Amendment was passed such an intention on the part of Congress is unthinkable.

[2] It may be urged that Congress intended the Administrator immediately after the enactment of the Taft Amendment to make a determination under Section 2(j) (3) with respect to each existing regulation containing specifications or standards. The

Taft Amendment does not in terms so require, however, and in view of the complexities of the problem, involving many industries, such an immediate determination was clearly impossible. Time was obviously required for investigation and consideration. Unquestionably the Administrator acted with reasonable promptness in making his determination as to MPR 30 in less than two months after the Taft Amendment became law. We think that the Taft Amendment required no more of him than this. Our conclusion is that Section 1347.14(d) of MPR 30 was not invalid between July 16, 1943 and September 11, 1943 by reason of its use of a specification or standard.

The complainants urge that the conclusion thus reached is unfair to them because they were left in doubt as to the validity of the regulation during the interim between the passage of the Taft Amendment and the Administrator's determination. But the Taft Amendment did not render the regulation invalid on its face. United States v. Pepper Bros., 3 Cir., 1944, 142 F.2d 340. Its validity depended upon whether it could reasonably be said that the use of the specification or standard was the only practicable method for securing effective price control of unsorted wastepaper. The complainants, as active members of the wastepaper industry, were in a position to know whether this was so and, therefore, to form an intelligent judgment as to the effect of the Taft Amendment upon the regulation. Moreover if they were in doubt during that time it was open to them by protest to question the validity of the regulation and to secure a determination of that question. This they did not do. On the contrary they proceeded to violate the regulation without taking the steps which were open to them to test its continued validity. Under these circumstances they can hardly assert that they were denied due process by the failure of the Administrator to make his determination before they violated the regulation. Compare Yakus v. United States, 1944, 321 U.S. 414, 447, 64 S.Ct. 660, 88 L.Ed. 834.

A judgment will be entered dismissing the complaint.

LINDLEY, Judge (dissenting).

I am sorry that I cannot agree with the majority opinion.

If the legislature delegates to an executive or administrative body authority to promulgate regulations or enter orders, pro-vided a certain administrative finding or determination of existence of certain facts be made, the delegated authority fails in the absence of the requisite finding or determination. Mr. Chief Justice Hughes' announcement in Panama Refining Co. v. Ryan, 293 U.S. 388, 409, at page 432, 55 S.Ct. 241, at page 253, 79 L.Ed. 446, is pertinent: "If the citizen is to be punished for the crime of violating a legislative order of an executive officer, or of a board or commission, due process of law requires that it shall appear that the order is within the authority of the officer, board, or commission, and, if that authority depends on determinations of fact, those determinations must be shown." And Mr. Justice Brandeis, in United States v. Baltimore & O. R. Co., 293 U.S. 454, 55 S.Ct. 268, 272, 79 L.Ed. 587, in discussing certain authority of the Interstate Commerce Commission, made similar comment, saying: "The act conferred authority (on the Commission) to prescribe by rule specific devices, or changes in the equipment, only where these are required to remove 'unnecessary peril to life or limb.' * * * its finding to that effect is essential to the existence of authority to promulgate the rule; and, as Congress has made affirmative orders of the Commission subject to judicial review, * * * the order may be set aside unless it appears that the basic finding was made. * * * complete absence of 'the basic or essential findings required to support the Commission's order' renders it void." See also Wichita Railroad & Light Company v. Public Utilities Commission of State of Kansas et al., 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124, and Mahler et al. v. Eby, 264 U.S. 32, 44 S.Ct. 283, 288, 68 L.Ed. 549. In the latter case the court commented concerning a warrant of the Secretary of Labor that, inasmuch as it lacked the finding required by the Statute, it was invalid; that the defect went "to the existence of the power on which the proceeding rests."

That the Congress intended by the amendment that no regulation, new or already existing, standardizing commodities should have validity until the requisite determination had been made seems obvious from the statement of the managers on the part of the House of Representatives in the Conference Report accompanying H. J. Res. 147 on July 8, 1943 (H. Rep. No. 697, 78th Cong. 1st Sess., p. 3) as follows: "The third clause requires that before any com-

modity may be standardized the Administrator must determine that no practicable alternative method exists for securing effective price control of the commodity." The Administrator himself said in his statement of reasons involved in the issuance of Supplementary Order No. 64: "The clause recognizes the Administrator's authority to establish standards whenever he determines 'that no practicable alternative exists for securing effective price control with respect to' a commodity"; and, "Read in conjunction with clause 3, this merely emphasizes that clause 4 forbids the Administrator to employ standards in price control when those standards fail to meet the stringent conditions of clause 4 unless he can bring his action within the exception to clause 3 by making a determination that no practicable alternative to standardization exists for securing effective price control." He described such action as a condition with which he was required to comply before effectuating standardization.

But the Administrator now takes the position that the unamended regulation possesses all the support necessary to a suit for triple damages or prosecution for criminal liability. He seems to admit, impliedly at least, that upon denial of a protest this court would have to make a judicial determination of invalidity. This is little short of complete confession by respondent of the propriety of the complaint. If an existing regulation is defective because of failure to make a finding and if such defect establishes invalidity in this court when the regulation is attacked here in a protest proceeding, I know of no reason why it should not likewise be held invalid under Section 204(e) (1), 50 U.S.C.A. Appendix § 924(e) (1), I can conceive of no justification for not declaring invalidity as of the time of the effectiveness of the amendment, lasting until the determination was made. Otherwise the Administrator might proceed to enforce the regulation in its original form, without making the determination required by the legislature. In such case Congress's mandate would become entirely meaningless.

I think this reasoning should apply to existing regulations reflecting absence of the essential finding. The amendment having been enacted in an expressed desire to meet the objection that the Price Administrator had exceeded the limitations expressed in Section 2(h) of that Act, 50 U.S.C.A.Appendix, § 902(h), in issuing certain regulations already promulgated, it would seem clear that Congress thought that previous to the amendment the Administrator had been going too far, and ordered him to desist unless and until he made a certain determination.

From and after the effective date of the amendment, complainants, as well as others in the industry, had no fore-knowledge of what the Administrator might determine in this crucial respect, or indeed, whether he would ever make any determination of any character; yet the majority would require them to divine what the Administrator would do, and, if they did not foresee what was going to happen, to act at their peril with danger of subjecting themselves to criminal prosecution and a penalty of treble damages. This, I think, far beyond the intent of Congress; nor does it comport with my conception of due process of law.

To illustrate the extremes to which the majority opinion would carry us, let us assume that the Administrator had not made the essential determination for a year after the Congress enacted the requirement for a determination and yet had prosecuted complainants within that period for violation of the unamended regulation. Then, under the reasoning of my brethren they could be convicted and sentenced and execution of the sentence satisfied, all before the Administrator made the determination which Congress had mandatorily made essential to validity of the regulation. And if the regulation were valid for two months or three months or a year or two years without any determination it might just as logically always be valid. Under this reasoning, respondent need never make a determination, though Congress has directed him to do so.

Apparently the Administrator himself recognized the defect in his regulation resulting from the amendment and realized that he was required to make a determination, for he did so some two months after the amendment became law. But under the majority's view he need never do so. Congress accomplished nothing by the amendment, if after its passage, a regulation could be enforced without compliance with the law.

Under United States v. Pepper Bros., 3 Cir., 142 F.2d 340, a regulation may be enforced until it is declared invalid by this court. That necessarily follows from the

action of Congress withholding from the enforcement courts power to pass upon validity and vesting in this court sole jurisdiction to decide invalidity. But it does not follow that when proper application·is made to this court, we should refuse to declare a regulation which fails to comply with the law, invalid as of the date of the amendment.

Even though the regulation remained valid for enforcement purposes in the district court, in view of that court's lack of jurisdiction to pass upon validity, it seems 'to me that when complainants pursue the remedy which Congress has provided, it is our duty to enforce the legislative intent by declaring the regulation invalid, such invalidity reverting back to the time of 'the effective date of the amendment.

I would deny the motion to dismiss.