THOMAS PAPER STOCK CO. ET AL. *v.* PORTER, PRICE ADMINISTRATOR.

Nos. 67 and 578. Argued February 25, 26, 1946.—Decided April 22, 1946.

*Jack H. Oppenheim* argued the cause for petitioners. With him on the briefs was *Claude A. Roth.*

*Jacob D. Hyman* argued the cause in No. 578, and *Richard H. Field* argued the cause in No. 67, for respondent. With them on the briefs were *Solicitor General McGrath, Ralph F. Fuchs* and *Josephine H. Klein.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Having been charged with violations of a price regulation, petitioners challenged its validity before the Emergency Court of Appeals by two different modes in two separate actions. The claim of invalidity in both proceedings was based on the Taft Amendment to the Price Control Act. Adjudication of this claim will dispose of both cases without consideration of procedural issues raised before the Emergency Court.

Thomas Paper Stock Company, a dealer in paper scrap, and its president were indicted under § 205 (b) of the Emergency Price Control Act, 56 Stat. 23, 33; 50 U. S. C. App. § 925 (b), for the sale of wastepaper in violation of Maximum Price Regulation No. 30, 7 Fed. Reg. 9732 (Nov. 24, 1942). Section 1347.14 (d) of that regulation fixed the maximum price for unsorted wastepaper in terms of a specification or standard. *Id.* at 9735. On similar allegations, the Administrator later began an action against petitioners for treble damages. § 205 (e), 56 Stat. 23, 34; 50 U. S. C. App. § 925 (e). Both proceedings involved sales of wastepaper between July 16, 1943 and September

11, 1943. The dates are crucial. July 16, 1943 is the effective date of the Taft Amendment, the proper construction of which is the controlling issue. On September 11, 1943, the Administrator, by an amendment to the Maximum Price Regulation No. 30, "determined" that "no practicable alternative exists for securing effective price control" with respect to such wastepaper except through the standardization defined in the pre-Taft Amendment Maximum Price Regulation No. 30. 8 Fed. Reg. 12554 (Sept. 14, 1943). The problem before us is whether, after the Taft Amendment, sales of wastepaper were governed by a maximum price based on a standard, prior to the determination by the Administrator on September 11, 1943 that there was no practicable alternative to such standardization.

And so we turn to the Taft Amendment. It added subsection (j) to § 2 of the Emergency Price Control Act. The relevant provisions of the Taft Amendment are these:

> "(j) Nothing in this Act shall be construed . . . (3) as authorizing the Administrator to standardize any commodity, unless the Administrator shall determine, with respect to such standardization, that no practicable alternative exists for securing effective price control with respect to such commodity; or (4) as authorizing any order of the Administrator fixing maximum prices for different kinds, classes, or types of a commodity which are described in terms of specifications or standards, unless such specifications or standards were, prior to such order, in general use in the trade or industry affected, or have previously been promulgated and their use lawfully required by another Government agency." 57 Stat. 566; 50 U. S. C. App. § 902 (j).

We agree with the Emergency Court that Congress thus provided "three alternative situations in any one of which

[the Administrator] is authorized to employ specifications or standards in connection with price control." *Thomas Paper Stock Co.* v. *Bowles,* 148 F. 2d 831, 835. Thus, in the case of wastepaper, standardization is permitted under Clause (3) of the Amendment although the Administrator may define a standard which "had not previously been used by the wastepaper industry or required by another Government agency." *Id.* at 837. But we are also of opinion that beginning with July 16, 1943, the day the Taft Amendment came into force, it precluded standardized commodity prices unless and until the Administrator "determined" that no other method of price control was practicable. The terms of the Amendment, in the circumstances of its setting, see, *e. g.,* H. R. Rep. No. 697, 78th Cong., 1st Sess. (1943), bring us to this conclusion, but we need add little to the full discussion the Taft Amendment received in the opinion of the court and that of the dissent below. *Thomas Paper Stock Co.* v. *Bowles,* 151 F. 2d 345. For us the decisive consideration is that the Amendment was a rigorous limitation upon the powers of the Administrator based upon the Congressional view that standardizations outstanding at the time the Taft Amendment was passed had not been authorized by the more general language of the original Act. § 2 (h), 56 Stat. 23, 27; 50 U. S. C. App. § 902 (h).[1] Accordingly, Congress laid down a specific requirement for the validity of prices based on standards, and a fair reading of the Amendment in the light of its history requires that the Administrator must indicate that he has fulfilled this requirement. See *United States* v. *B. & O. R. Co.,* 293 U. S. 454. It would hardly satisfy the restriction which the Taft Amendment

---

[1] "The powers granted in this section shall not be used or made to operate to compel changes in the business practices, cost practices or methods, or means or aids to distribution, established in any industry, except to prevent circumvention or evasion of any regulation, order, price schedule, or requirement under this Act."

54

placed upon the Administrator's power to standardize to allow him to continue situations which, as Congress thought, needed correction.

In signing the joint resolution containing the Taft Amendment, the President did so with the understanding that it "preserved power in the Administrator to 'standardize' a commodity in any case on which this was absolutely essential to an effective system of fixing prices." See Statement of Price Administrator's Reasons Involved in the Issuance of Supplementary Order No. 64 (Sept. 11, 1943). Congress thus gave power to standardize; it did not stereotype past standardizations. With entire candor the Administrator conceded here that he "had many regulations outstanding which required re-examination in the light of the terms of the Taft Amendment." But although the Amendment apparently had the acquiescence of the Administrator, it contains no saving clause that all outstanding standardizing regulations were to be deemed continuingly valid, nor is there any intimation warranting such an implied limitation. The court below seemed to recognize the duty of a manifested determination by the Administrator of the need for a standardized price by suggesting that the Administrator showed "reasonable promptness" in making the determination applicable to wastepaper within two months after the Taft Amendment. But Congress did not sanction standardization for what we may deem a reasonable period after the enactment of the Taft Amendment without the Administrator's determination of its need.

This is too substantial a qualification to be made by judicial interpolation. Nor can we draw on broad arguments about inflationary pressures on price control in construing legislation dealing with so technically confining a provision as that of the Taft Amendment. The legislation was too specifically directed against prior unauthor-

ized regulations, promulgated no doubt with the best of motives in the great effort against inflation, for us to give it a meaning other than that which the language in the context of its history yields. Of course, all provisions of the Emergency Price Control Act are infused by its far-reaching aims. But the accommodation of the various interests involved in a system of price control is for Congress and not for us, and we must construe its legislation as fairly as we can to catch the will behind the words. That the construction we have placed upon the Taft Amendment does not touch the vital forces in price control is indicated by the Government's opposition to a review of this litigation on the ground that it was devoid of much practical significance.

It only remains to unsnarl the complicated procedures by which the petitioners sought to establish the invalidity of the regulation which they were charged with violating. On June 15, 1944, petitioners filed a protest against § 1347.14 (d) under § 203 (a) of the Act. 56 Stat. 23, 31, 58 Stat. 632, 638; 50 U. S. C. App. § 923 (a). By this time, as has been noted, the Administrator had amended the regulation to conform in terms with the Taft Amendment. The Administrator denied the protest on the merits and also expressed doubt as to his power to consider the validity of a regulation of which the alleged defects had been cured. The Emergency Court of Appeals sustained the Administrator on the ground that a corrected regulation bars protest. *Thomas Paper Stock Co.* v. *Bowles,* 148 F. 2d 831. We then brought the case here as one of a series of cases raising important issues in the enforcement of the Emergency Price Control Act. 326 U. S. 715.

In the meantime petitioners invoked § 204 (e) of the Act, 58 Stat. 632, 639; 50 U. S. C. App. § 924 (e), whereby they sought leave to file a complaint directly with the

Emergency Court. The District Court, before which the criminal prosecution was pending, granted such leave pursuant to § 204 (e). The Emergency Court then passed on the merits of the claim of the invalidity of the regulation in controversy between the date of the Taft Amendment and September 11, 1943, when in Supp. Order 64, 8 Fed. Reg. 12554, the Administrator determined the necessity for standards. That court, as we have seen, held that the old regulation survived the Taft Amendment, *Thomas Paper Stock Co. v. Bowles,* 151 F. 2d 345, and we granted *certiorari.* 326 U. S. 715.

It is this latter judgment, in No. 578, that we now reverse with the result that disregard of the regulation based on standardized prices for wastepaper not "determined" by the Administrator prior to September 11, 1943, does not subject petitioners to the penalties of the Price Control Act. In view of disposition in No. 578 of the merits of petitioner's claim of invalidity under the Taft Amendment it would be futile to decide the issue on which judgment went in No. 67. Accordingly, the writ of *certiorari* issued in No. 67 will be dismissed.

MR. JUSTICE JACKSON took no part in the consideration or decision of these cases.

MR. JUSTICE BLACK, dissenting.

The judgment which the Court just rendered permits these petitioners and others to keep profits obtained from sales made at inflationary prices expressly prohibited by Maximum Price Regulation No. 30. That Regulation establishes dollar and cent ceiling prices for thirty-two grades of wastepaper defined by the Price Administrator. It is the type of regulation, of which there have been many, which controls prices by first standardizing or grouping similar commodities, and then fixing one and

the same maximum price for each of the commodities in a particular classification. On July 16, 1943, long after Regulation No. 30 was promulgated and fully in force, Congress added the Taft Amendment (§ 2 (j)) to the Emergency Price Control Act of 1942. The Court holds that Congress intended by this Amendment to invalidate automatically Price Regulation No. 30, and all the numerous regulations like it, until such time as the Price Administrator should find it possible, amidst all his pressing duties, to investigate and make determinations, formally expressed in writing, that only by standardizing or grouping certain commodities could price control over them be successfully enforced. Since the task of rechecking all past regulations which contained standardization provisions was very great, the Administrator did not find time to reach the Regulation here involved until two months after the Amendment's enactment. The Court holds that during this interval the public had no protection whatever from inflationary prices prohibited by this Regulation. In my opinion this holding finds support neither in the Section's language nor its legislative history.

When the sponsor of the Taft Amendment offered it on the Senate floor his statement clearly indicated that it grew out of cooperative effort between the legislators and the Price Administrator, who certainly would not be interested in throwing a monkey wrench into O. P. A.'s enforcement of the existing regulations. Referring to provisions of the Act which his Amendment was intended to clarify, Senator Taft said: "Price Administrator Brown came before the committee and urged that it would seriously hamper his price regulations in a number of trades, regulations for which had already been issued, to many of which there was no objection. He submitted another

form of amendment, carrying out the same purpose, but making it perfectly clear that it would not interfere with those regulations, which are proper." Cong. Rec. July 6, 1943, Vol. 89, p. 7251.

In spite of this clear declaration on the part of Senator Taft of his intention to save "proper" existing regulations, the Court now gives the Taft Price Administrator Amendment a meaning which does "interfere with those regulations." It not only interferes with them; it completely destroys their effectiveness for an indefinite interval of time. These petitioners and others are wholly freed from any possible penalty for deliberate inflationary overcharges, forbidden by Congress, during the period between the passage of the Amendment and the Administrator's publication of his determinations. That the Regulation here involved was a "proper" regulation on the day the Taft Amendment was passed is conceded. That its standardization provisions were at all times necessary to the effective enforcement of the Act is shown both by the Administrator's later findings and by his original promulgation. Consequently, it is this Court, and not the Congress, which must take the responsibility for permitting petitioners to violate the price regulation with impunity.

Furthermore, the Taft Amendment's language offers no support for the Court's decision. For by its terms it neither repeals nor renders unenforceable or ineffective valid outstanding regulations which standardize commodities. And in addition to what has already been pointed out, the prevailing circumstances at the time of its enactment make it highly improbable that Congress intended such a result. At the time the Amendment was enacted the threat of inflation was the greatest since the outbreak of the war. Just in April the President had thought it necessary to issue his well-known "Hold-the-Line Order"

in order to tighten controls designed to stem the inflationary trend. Purchasing power was very great and consumer goods had become extremely scarce. Had Congress really intended to protect the public against inflation, as its legislation shows it did, it would not have chosen this time for relaxing government controls. The giving of free reign to inflationary pressure was likely to endanger seriously our economy and to bring great hardship to many individuals. I cannot, without a clear declaration to that effect with respect to any part of our economy, impute to Congress an intent to let inflation run riot during such critical times. I cannot conclude, therefore, as the opinion of the Court necessarily does, that Congress intended to suspend all Maximum Price Regulations containing standardization provisions until the Price Administrator reviewed them.

What then was the purpose of Congress in enacting the Taft Amendment? The Managers on the part of the House thus stated the Section's purpose in the Conference Report on the Amendment: It "is to meet the objection that the Price Administrator has exceeded *the limitations expressed* in section 2 (h) of . . . [the 1942 Price Control Act] in issuing certain regulations already promulgated." (Italics supplied.) Section 2 (h) provides: "The powers granted . . . shall not be used or made to operate to compel changes in the business practices, cost practices or methods, or means or aids to distribution, established in any industry, *except to prevent circumvention or evasion of any regulation, order, price schedule, or requirement under this Act.*" (Italics supplied.) As the Conference Report indicates, the Taft Amendment actually added little new, if anything at all, to the requirements already contained in § 2 (h). It was merely an explanation and elaboration of one phase of the requirements of § 2 (h).

Any regulation, including the one here held invalid, that was promulgated when § 2 (h) was in effect had to meet its requirements. As later explained by the Taft Amendment, the requirements of § 2 (h) which permitted the Administrator to require changed business practices to prevent "circumvention or evasion" included, in the case of regulations containing new standardization provisions, a determination that there was no practical alternative to effective price control. All standardization provisions, including the one here held invalid, in order to be valid under the old § 2 (h) had to be based on such a determination. The Taft Amendment was not, as the Court now holds, a declaration by Congress that all past standardization provisions had not been based on such a determination and that they were therefore invalid. Here the Regulation in question was promulgated while § 2 (h) was in full force and effect. Not only did petitioners fail to show that the Regulation was not based on the determination required by § 2 (h) as explained by the Taft Amendment, but the Administrator, after the Amendment was enacted, and before any proceedings were brought against petitioners, double checked the Regulation to make sure that it was based on the determination required. It is not denied, and apparently cannot be denied, that it was absolutely necessary for the Administrator to order these changed standardization practices in order to prevent circumvention or evasion. In my opinion, therefore, the wastepaper provisions of Maximum Price Regulation No. 30 were valid at all times, since they met the requirements of § 2 (h) as explained by § 2 (j). I would affirm the judgment below, which dismissed the complaint.

MR. JUSTICE DOUGLAS and MR. JUSTICE MURPHY join in this dissent.