WIGGINS, Circuit Judge:
This case involves an appeal from a district court’s order upholding the constitutionality of sections 106 and 121 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 (the 1984 Act). We affirm the holding of the district court that the challenged provisions of the 1984 Act do not violate the Appointments Clause.
FACTS AND PROCEDURAL HISTORY
The involuntary bankruptcy proceeding that gives rise to this appeal was filed against the Bennys in 1982. After the bankruptcy court entered an order for relief of creditors, the Bennys moved the bankruptcy court for reconsideration. Alexandra Benny (Benny) also moved to dismiss the proceeding on the basis that the bankruptcy judge improperly exercised jurisdiction over the bankruptcy proceedings because he was unconstitutionally reinstated to office. The district court granted Benny’s motion for partial withdrawal of the reference to bankruptcy court with respect to the constitutional issue.
Benny subsequently filed a motion in district court seeking: (1) a declaration that Congress violated the Constitution in passing sections 106 and 121 of the 1984 Act, which extended bankruptcy judges’ terms retroactively to June 28, 1984 and prospectively for two to four years; and (2) rescission of the Northern District of California’s July 20, 1984 general reference order referring all bankruptcy matters to bankruptcy judges. The crux of her argument was that either the bankruptcy judgeships or the bankruptcy judges’ terms of office had terminated on June 28, 1984, on the expiration of the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 92 Stat. 2549. She contended that the 1984 Act §§ 106 and 121 constituted congressional reinstatement of the bankruptcy judges, which violated the Appointments Clause, U.S. Const, art. II, § 2, cl. 2.
The Bennys’ trustee in bankruptcy and a committee of the Bennys’ unsecured creditors opposed the motion. Shortly thereafter, the Department of Justice (the Department) intervened pursuant to 28 U.S.C. § 2403(a) (1982), and submitted a memorandum in support of Benny’s position that the sections were unconstitutional. The United States Senate (the Senate) and the Speaker and Bipartisan Leadership Group of the House of Representatives (the House) sought leave to intervene, which the court granted, and argued that the sections were constitutional.[1]
The court heard argument on the motion on November 2, 1984. On November 30, *1136 1984, the court entered an order rejecting the constitutional challenge to sections 106 and 121 of the 1984 Act. Benny and the Department immediately appealed, asserting jurisdiction pursuant to 28 U.S.C. § 1291.
On February 12, 1985, the district court certified its order that upheld the constitutionality of sections 106 and 121 for immediate appeal pursuant to 28 U.S.C. § 1292(b). The Department filed a petition for leave to appeal on February 25. On May 21, this court granted the petition and directed the parties to discuss whether 28 U.S.C. § 1292(b) applies to this case. In the same order, the court consolidated the appeal with the appeals described above.
In our earlier decision, we dismissed Benny’s and the Department’s appeals grounded on section 1291 because the order appealed from was not final as required by that section. In re Benny, 791 F.2d 712, 718-19 (9th Cir.1986). We also dismissed the Department’s appeal grounded on section 1292(b) as improvidently granted because the petition for leave to appeal was not timely filed. Id. at 719-20.
The district court recertified its order for interlocutory appeal on August 29, 1986. Benny and the Department both filed timely petitions for leave to appeal.
JURISDICTION
We must once again determine our own jurisdiction over this appeal. We dismissed the Department’s earlier appeal in this case without reaching the merits because we lacked appellate jurisdiction. See In re Benny, 791 F.2d 712. One of the bases for that dismissal was that the Department’s petition for leave to appeal was filed more than ten days after the district court’s certification of the case for interlocutory appeal under 28 U.S.C. § 1292(b). The failure to meet this ten-day deadline prevented us from asserting jurisdiction. See In re Benny, 791 F.2d at 719-20.
Since our earlier dismissal, Benny has returned to the district court, obtained re-certification for interlocutory appeal, and Benny and the Department have filed timely petitions in this court for leave to appeal. This court has never directly addressed the issue of whether a recertification can cure a jurisdictional defect caused by a failure to timely petition from an earlier certification, although we suggested that such a cure is possible in Benny. Id. at 722 n. 14.
A. Recertification
The timely filing of a petition for leave to appeal following district court certification pursuant to 28 U.S.C. § 1292(b) is jurisdictional. In re Benny 791 F.2d at 719; see also United States v. Preston, 352 F.2d 352, 353 & n. 1 (9th Cir.1965). This court has no authority to extend the ten-day time limit. Fed.R.App.P. 26(b). However, this circuit has not yet determined whether a district court may effectively extend the time for filing a petition for leave to appeal by recertifying its order. Although nothing in the rules expressly permits the district court to extend the time for a petition for leave to appeal, cf., e.g., Fed.R.App.P. 4(a)(5) (allowing district court to extend time for filing notice of appeal), nothing specifically precludes the district court from doing so.
The other circuits have split in their approaches to this issue. The Sixth Circuit has held that a district court may not recertify to permit the filing of a timely petition if counsel’s neglect caused the failure to file a timely petition from the original certification. See Woods v. Baltimore & Ohio R.R. Co., 441 F.2d 407, 408 (6th Cir.1971) (per curiam). The Third Circuit adopted similar reasoning in Braden v. University of Pittsburgh, 552 F.2d 948, 950-55 (3rd Cir.1977) (en banc). The court in Braden allowed the district court to recertify if the district court clerk’s failure to provide timely notice of the original certification caused the initial failure to file a timely petition. The court distinguished the situation in which the petitioning party had simply been remiss in pursuing an attempt to appeal.[2]
*1137 The First and Fifth Circuits have adopted more flexible approaches. The First Circuit has implicitly approved a recertification, even though counsel’s neglect caused the failure to file a timely petition after the original certification. See In re La Providencia Dev. Corp., 515 F.2d 94, 95-96 (1st Cir.1975) (per curiam) (counsel lost chance to take interlocutory appeal where he failed to file timely petition after recertification). The Fifth Circuit squarely permits recertification if the district court determines that the statutory criteria are still met, noting that the petitioner’s failure to take advantage of the original certification is a factor to be considered by the district court in deciding whether to recertify its ruling and by the appellate court in deciding whether to grant the petition. Aparicio v. Swan Lake, 643 F.2d 1109,1110-13 & nn.4, 5 (5th Cir.1981); see Aucoin v. Matador Serv., Inc., 749 F.2d 1180, 1181 (5th Cir.1985).
Although these decisions’ liberal approach to recertification correctly takes into account the interlocutory nature of the appeal, they seem to us to go too far in the other direction. They effectively eliminate the ten-day jurisdictional limit completely by allowing apparently uncontrolled and repeated recertifications, a step we are not willing to take. We therefore elect to take the middle road adopted by the Seventh Circuit in Nuclear Engineering Co. v. Scott, 660 F.2d 241, 247 (7th Cir.1981), cert. denied, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). In Nuclear Engineering, the Seventh Circuit held that the critical inquiry is whether recertification advances the purposes of section 1292(b). If recertification will foster judicial efficiency and the district court recertifies the order, then the appellate court ought not to deny review solely because the petitioner failed to take advantage of the original certification. We therefore hold that if, as in this case, a district court on reconsideration re-certifies for interlocutory appeal an order that was previously certified for appeal but from which the appellant failed to timely petition to appeal, the court of appeals may exercise jurisdiction over the appeal if it determines that jurisdiction over the appeal would serve judicial efficiency.
The constitutionality of the federal bankruptcy courts and the tenure of the bankruptcy judges is an issue of critical importance to the bankruptcy court system and to judicial administration. Moreover, the issue is of immediate concern because of the continued use of judicial resources pursuant to the challenged bankrupcty statutes. This continued use is potentially wasted if sections 106 and 121 are ultimately unconstitutional. We therefore conclude that interlocutory review of the case would serve judicial efficiency.
B. Mootness
Presiding Bankruptcy Judge King’s term under the reference order expired on October 1, 1986. This court cannot rescind the expired reference order, and so cannot *1138 afford Benny the rescission relief she sought. Accordingly, that remedy is now moot. However the declaratory judgment relief Benny requests is not moot. Benny has preserved her claim of unconstitutionality regarding orders entered by Judge King, one of which (order denying motion to dismiss Mrs. Benny from the joint case) is on appeal to this court. Benny v. Chicago Title & Ins. Co., No. 86-1591 (9th Cir.). As the declaratory judgment question is a live one, the case is not moot. See, e.g., Super Tire Eng’g Co. v. McCorkle, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974) (where the challenged government activity casts “what may well be a substantial adverse effect on the interests of the petitioning parties the case ... is not moot”); see also Hooker Chem. Co. v. United States Envtl. Protection Agency, 642 F.2d 48, 52 (3d Cir.1981) (an appeal will not be deemed moot if there is a reasonable likelihood that parties will contest the same issues in a subsequent proceeding). We therefore conclude we may exercise jurisdiction over the appeal. We now turn to the merits of the case;
MERITS
I.

Background

In 1978, Congress enacted a new bankruptcy scheme that largely replaced the Bankruptcy Act of 1898, ch. 541,30 Stat. 544, and its subsequent amendments. See Bankruptcy Reform Act of 1978 (the 1978 Act), Pub.L. No. 95-598,92 Stat. 2549. See generally 1 Collier on Bankruptcy ¶ 1.01-.03 (L. King 15th ed. 1985). The 1978 Act gave bankruptcy courts broader jurisdiction than the previously established bankruptcy referees and bankruptcy courts had exercised. See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 54, 102 S.Ct. 2858, 2862, 73 L.Ed.2d 598 (1982) (plurality opinion). The 1978 Act’s provisions concerning bankruptcy courts were not to become effective until April 1, 1984. 1978 Act, § 402(b); see Securities and Exch. Comm’n v. Panning (In re Carter), 759 F.2d 763, 764-65 (9th Cir.1985). Between 1978 and April 1, 1984, Congress provided for a transition period, during which the bankruptcy judges were to exercise the expanded jurisdiction provided by the Act. Id. The 1978 Act’s transition provisions extended the term of any bankruptcy judge who was serving on November 6, 1978, until March 31,1984, “or whenever his successor takes office.” 1978 Act § 404(b).
In June 1982, before the 1978 Act’s permanent provisions for bankruptcy courts had taken effect, the Supreme Court struck down the 1978 Act because it conferred excessive jurisdiction on non-Article III bankruptcy judges. Northern Pipeline Constr. Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598. The Court held that its decision applied prospectively only, however, and stayed its judgment fourteen weeks to permit Congress to act. Id. at 87-89,102 S.Ct. at 2880-2881 (plurality opinion); id. at 92, 102 S.Ct. at 2882 (Rehnquist, J., concurring). After fourteen weeks, Congress had not acted. The Court stayed its judgment an additional eleven and one-half weeks. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 459 U.S. 813, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982) (mem.). When Congress had still not acted by the expiration of the second stay, on December 24, 1982, district courts promulgated temporary emergency rules to govern the disposition of bankruptcy cases. See, e.g., N.D. Cal. Gen. Order 24 (Dec. 27, 1982, effective Dec. 25, 1982).
On March 31, 1984, the day before the 1978 Act’s transition provisions were to expire, Congress passed temporary legislation that extended the transition provisions. Pub.L. No. 98-249, 98 Stat. 116 (1984). Specifically, Congress extended the existing bankruptcy courts through April 30, 1984, and extended the terms of existing bankruptcy judges through “April 30, 1984 or when [their] successors] take [] office.” Id. § 1(b) (amending section 404(b) of the 1978 Act). On April 30, Congress enacted nearly identical legislation that again extended the transition provisions through May 25. Pub.L. No. 98-271,98 Stat. 163 (1984). Con *1139 gress extended the transition provisions twice more, eventually through June 27, 1984. Pub.L. No. 98-299,98 Stat. 214 (1984); Pub.L. No. 98-325, 98 Stat. 268 (1984) (collectively the Extension Acts).
Congress had not acted by June 27, 1984. It finally passed legislation on June 29, 1984. The President signed the 1984 Act on July 10, 1984. Pub.L. No. 98-353, 98 Stat. 333. Section 106(a) of the 1984 Act, 98 Stat. at 342, continued existing bankruptcy judges in office until the later of October 1, 1986, or four years after the particular judge’s last appointment to office. Section 121(b) of the 1984 Act, 98 Stat. at 345-46, retroactively provided that bankruptcy judges’ terms under the 1978 Act’s transition provisions had continued until the day before the 1984 Act was enacted. These facts gave rise to the questions before us: whether there was a gap in the bankruptcy judges’ terms of office, or in the offices of bankruptcy judges themselves, such that their terms lapsed on June 27, 1984 and Congress reappointed them on July 11, 1984, in violation of the Appointments Clause.
Concerns about this issue surfaced almost immediately. On the day after the President signed the 1984 Act, the Director of the Administrative Office of the United States Courts announced that the office had been advised by his counsel and the Executive Branch not to pay bankruptcy judges, because they had been unlawfully appointed by Congress in the 1984 Act. See, e.g., 11 U.S.C.A. Rules 7001-end, Forms 1-end (1986 Supp.) [hereinafter U.S. C.A. Appendix] at 44-49; N.Y. Times, July 21, 1984, § 1, at 39, col. 1 [hereinafter N.Y. Times article]. About a week later, the Director announced that the Administrative Office would pay bankruptcy judges, but continued to assert his constitutional concerns. See U.S.C.A. Appendix at 53-56; N.Y. Times article; Nat’l L.J., July 23, 1984, at 3. The President expressed similar concerns on the day that he signed the Act into law. See President’s Statement Regarding H.R. 5174, 20 Weekly Comp. Pres. Doc. 1010-01 (July 10, 1984), reprinted in U.S.C.A. Appendix at 42-43; N.Y. Times article. The 1984 Act's sponsors believed that provisions of the Extension Acts and the 1984 Act successfully .avoided any such problems. See, e.g., 130 Cong. Rec. H7489, H7491 (daily ed. June 29, 1984) (statement of Rep. Rodino). Other members of Congress, however, agreed with the President and the Administrative Office. See 130 Cong. Rec. H7493 (daily ed. June 29,1984) (statement of Rep. Sawyer).
Bankruptcy courts have operated under the 1984 Act since July 10, 1984. See, e.g., E.D. Cal. Gen. Order No. 161 (July 10, 1984).
II.

Constitutionality of Sections 106 and 121

This appeal challenges the constitutionality of bankruptcy judges’ occupation of their offices under sections 106 and 121 of the 1984 Act.[3] The appeal raises two primary issues. First, we must determine whether there was a .gap in the continuity of the bankruptcy courts and the tenure of bankruptcy judges between June 27, 1984, when the bankruptcy court provisions of the 1978 Act apparently expired, and July 11, 1984, when the 1984 Act apparently went into effect. If so, we must determine whether Congress violated the Appointments Clause, U.S. Const, art. II, § 2, cl. 2, by reinstating the judges to their offices in the 1984 Act.[4]
*1140 As a prerequisite to the constitutional question, we first determine whether the gap in the bankruptcy judges’ tenure in fact ever existed. Because we must construe the statutes and the Constitution in order to determine whether a gap existed, we conduct de novo review. See Southeast Alaska Conservation Council, Inc. v. Watson, 697 F.2d 1305, 1309 (9th Cir.1983).
Benny and the Department contend that the 1978 Act’s provisions for the existence of bankruptcy courts and the tenures of bankruptcy judges, as extended by the Extension Acts, expired before the 1984 Act was enacted. Section 404 of the 1978 Act extended the existing bankruptcy courts and bankruptcy judges through the 1978 Act’s transition period. Section 404(a) provided a concrete cutoff date: it extended the bankruptcy courts “through March 31, 1984.” 1978 Act § 404(a). Section 404(b), however, provided that any bankruptcy judge serving on the date of enactment would continue to serve until “March 31, 1984, or when his successor takes office.” 1978 Act § 404(b) (emphasis added).
Congress extended the March 31 cutoff date to June 27, 1984 in the Extension Acts. Each of the Extension Acts is identical to the others except for the dates through which they extend the 1978 Act. See Extension Acts. Each of the Extension Acts contains two sections. The first section of each act amends 1978 Act § 402, which places the 1978 Act’s permanent provisions into effect, by striking the effective date and replacing that date with a later date. Specifically, section 1(b) of each act extends the dates set forth in 1978 Act § 404(a) and (b), which provide a fixed date for the termination of bankruptcy courts under the transition provisions and an open-ended date for the termination of the bankruptcy judges’ tenures under those provisions. Section 2 of each Act, however, does not refer to section 404 of the 1978 Act, but simply states that the bankruptcy judges’ terms of office extend to and expire on a particular date. Thus, section 1(b) of each act is inconsistent with itself and with section 2.
These inconsistencies in the Extension Acts make the acts ambiguous. We may therefore consider the legislative history of the acts. See Schwenke v. Secretary of the Interior, 720 F.2d 571, 576 (9th Cir.1988) (holding that courts may resort to legislative history to determine the proper meaning of a statute if language “is not altogether clear,” or, even if the language is clear, if unambiguous contrary evidence of legislative intent exists). In addition, courts should liberally construe legislation enacted to alleviate emergency situations. See Thomas Paper Stock Co. v. Porter, 328 U.S. 50, 54-55, 66 S.Ct. 884, 886-87, 90 L.Ed. 1078 (1946) (liberally construing price controls enacted to combat wartime inflation). The imminent demise of the nationwide bankruptcy court system at least arguably creates such an emergency situation.
The legislative history of the Extension Acts makes clear that the acts were intended to extend the existing bankruptcy courts and judges until a new bankruptcy scheme could be enacted. See, e.g., 130 Cong. Rec. S8887 (daily ed. June 29, 1984) (statement of Sen. Thurmond), reprinted in 1984 U.S. Code Cong. & Admin.News 581, 583; 130 Cong.Rec. S3500-01 (daily ed. Mar. 30, 1984) (statement of Sen. Thurmond); id. at H2121-22 (statement of Rep. Rodino); 130 Cong.Rec. H3078-79 (daily ed. Apr. 26, 1984) (statements of Reps. Moakley and Kindness); 130 Cong.Rec. S6428 (daily ed. May 24, 1984) (statement of Sen. Baker); 130 Cong.Rec. H4841 (daily ed. May 24, 1984) (statement of Rep. Rodino).[5] Benny *1141 and the Department argue these expressions of intent are negated by the expression of doubt by some members of Congress that the legislation had effectuated this intent and by 1984 Act § 121. This contention is unpersuasive. Although some members of Congress did express fear that the Extension Acts had failed to continue the bankruptcy courts and judges until the 1984 Act became effective, see, e.g., 130 Cong.Rec. H7493 (daily ed. June 29,1984) (statement of Rep. Sawyer), doubt that the Extension Acts had implemented Congress’ intent does not bear on the intent itself.
Similarly, the enactment of 1984 Act § 121, which retroactively extended the last individual Extension Act until the 1984 Act became effective, does not imply that Congress intended that the extensions of the 1978 Act’s transition provisions would not prospectively extend the bankruptcy courts’ existence and its judges’ terms. The legislative history suggests that Congress included 1984 Act § 121 solely in an abundance of caution to insure that the bankruptcy courts and judges’ tenure were uninterrupted. See 130 Cong.Rec. H749192 (daily ed. June 29, 1984) (statement of Rep. Rodino). The legislative history contains no suggestion that Congress included section 121 because it had not previously intended to extend existing bankruptcy courts and judges until it enacted new legislation.
We conclude that in enacting the Extension Acts Congress intended to continue the existence of the bankruptcy courts and judges pending the 1984 Act. When the Extension Acts’ provisions finally expired on June 27,1984, the bankruptcy judges held their offices as holdover tenants, pursuant to section 1(b) of the Acts. Although section 1(b) conflicts with other provisions of the Extension Acts, we hold that it governs in order to effectuate the congressional intent to continue both the bankruptcy courts and judges until the 1984 Act became effective. Although Congress did not provide such a holdover period for the courts themselves, section 404(b) of the 1978 Act clearly envisions that the holdover judges would maintain their office until their successors were appointed, and Congress never authorized such an appointment until the 1984 Act took effect.[6] See In re Koerner, 800 F.2d 1358, 1366 (5th Cir.1986).
Benny appears to contend that Congress may never extend terms of office prospectively. This contention is unpersuasive. The Supreme Court has implied that Congress may prospectively alter terms of office without running afoul of the Appointments Clause. See Wiener v. United States, 357 U.S. 349, 350, 78 S.Ct. 1275, 1276, 2 L.Ed.2d 1377 (1958). Moreover, Congress’ power to extend prospectively terms of office can be implied from its power to add to the duties of an office other duties that are germane to its original duties. Shoemaker v. Unitee States, 147 U.S. 282, 300-01, 13 S.Ct. 361, 37 L.Ed. 170 (1893). Logically, the only point at which a prospective extension of term of office becomes similar to an appointment is when it extends the office for a very long time. If, for example, Congress extended the term of an office in perpetuity, the effect would be similar to an appointment of the incumbent. The persons authorized by the Constitution to appoint would be foreclosed from exercising that power, and the incumbent would remain in office unless he or she could somehow be removed. Even the Department does not contend, however, that a short extension, like the one at issue here, prevents those who have the appointment power from exercising that power. Similarly, the Department does not challenge the six year extension that was given to some bankruptcy judges in the 1978 Act. 1978 Act § 404.
In addition, courts may consider historical practice in determining whether a branch’s particular exercise of power comports with the Constitution. See Stuart v. *1142 Laird, 5 U.S. (1 Cranch) 299, 308, 2 L.Ed. 115 (1803) (long practice of Supreme Court Justices sitting as Circuit Justices is a “contemporary interpretation [of the Constitution] of the most forcible nature”); see also United States v. Woodley, 751 F.2d 1008, 1010-11 (9th Cir.1985) (en banc) (relying on historical practice to uphold recess appointments against Article III concerns), cert. denied, — U.S. —, 106 S.Ct. 1269, 89 L.Ed.2d 577 (1986). The House cited numerous instances in which Congress has enacted prospective extensions of terms of office. One example dates from the time of the creation of the Constitution, and involves the prospective extension of the term of the first Postmaster General. See Act of September 22, 1789, ch. XVI, 1 Stat. 70 (temporarily establishing the post office); Act of August 4, 1790, ch. XXXVI, 1 Stat. 178 (first extension); Act of March 3, 1791, ch XXIII, 1 Stat. 218 (second extension).
The Department's attempts to distinguish this example are unpersuasive. The Department asserts that the example is no longer valid in light of Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926), where the Court held that a postmaster is an executive officer who serves at the will of the President. See id. at 176, 47 S.Ct. at 45. Myers is irrelevant here. Whether the President may remove a postmaster does not reflect on Congress’s power to extend the postmaster’s term, even if it may in practice have an impact on the length of time a given postmaster will actually serve in office. Thus, historical practice supports Congress’ right to prospectively extend terms of office.
Because we interpret section 1(b) of the Extension Acts to have provided that bankruptcy judges held office as holdover tenants until the effective date of the 1984 Act, and because Congress did not act unconstitutionally in extending the judges’ holdover terms, we AFFIRM the district court’s decision.

. A group of bankruptcy judges, none of whom sits in this circuit, also sought leave to intervene. The district court denied leave, and this court affirmed. See In re Benny, 791 F.2d 712, 720-22 (9th Cir.1986). We regard the portion of their brief dealing with the statutory and constitutional issues as an amicus brief, and we have considered the arguments it presents.

. Braden and Woods are consistent with this court’s approach to reentry of judgment to permit an appeal as of right. In Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir.1983) (en banc), for *1137 example, we limited a district court’s discretion under Fed.R.Civ.P. 60(b)(1) to vacate and reenter judgment in order to revive a lapsed right to appeal to very narrow circumstances. This limitation was based on our concern with the compelling interest in the finality of judgments. Id. at 459-60. We concluded that parties’ interests in being able to rely on the finality of judgments is outweighed by excusable neglect only in a narrow range of circumstances. Id.
The interlocutory appeal situation involved here is not as critical as the final judgment involved in Rodgers, however. The decision in the interlocutory appeal context affects only whether an appeal may be taken now, not, as in the case of a final judgment, whether an appeal can ever be taken. See Braden, 552 F.2d at 953-54 (noting that the 10-day provision appeared to be intended to expedite interlocutory appeals, but expressing little concern over the delay attributable to recertification because the possibility of adding the certification "at any time” necessarily countenanced delay in some circumstances); Fed.R.App.P. 5(a) (“An order may be amended to include the prescribed statement [under section 1292(b) ] at any time----”). This distinction suggests a more flexible approach to recertification of interlocutory appeals than the approach we took in Rodgers to appeals as of right from final judgments.
It should also be noted that both Woods and Braden addressed only the issue of the simple vacating and reentry of certification. They did not address the issue, alluded to in Woods, 441 F.2d at 408, of whether a court of appeals could acquire jurisdiction from a petition timely filed after a district court’s certification order reentered upon "reconsideration.”

. Only the Fifth Circuit has addressed the constitutionality of these statutes. See Koerner v. Colonial Bank (In re Koerner), 800 F.2d 1358, 1362-67 (5th Cir.1986). The Koemer court came to the same conclusion as this court now does.

. The Appointments Clause states:
[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.
U.S. Const, art. II, § 2, cl. 2.

. Where, as here, the legislative history consists solely of floor debate, "the comments of individual legislators carry substantial weight, especially when they reflect a consensus as to the meaning and objectives of the proposed legislation though not necessarily the wisdom of that legislation." Northeast Bancorp, Inc. v. Board of Governors, 472 U.S. 159, 105 S.Ct. 2545, 2551, 86 L.Ed.2d 112 (1985). The comments of individual legislators regarding the Extension Acts and the 1984 Act, cited above, appear to reflect such a consensus. As described above, no other comments reflect a different purpose for the legislation, although some comments reflect doubt with respect to its effect.

. Even if the extension of the bankruptcy courts cannot be implied from the holdover terms of the bankruptcy judges, we face no difficulties from the Appointments Clause. The Appointments Clause governs only the appointment of officers, and not the existence of the agencies in which they serve. Congress could thus retroactively extend the term of the bankruptcy courts.