**In re Willard H. STAPLETON, Annette W. Stapleton, Debtors.**

**Willard H. STAPLETON, Annette W. Stapleton, Appellants,**

v.

**ARCHER DANIELS MIDLAND COMPANY, Amoco Oil Company, Gold Kist, Inc., and Borg-Warner Acceptance Corporation, Appellees.**

Bankruptcy No. 382–00067.

Adv. No. 383–0027.

Civ. A. No. CV384–29.

United States District Court, S.D. Georgia, Dublin Division.

Nov. 14, 1985.

Thomas P. Stamps, Atlanta, Ga., for debtors.

John C. Weitnauer, Grant T. Stein, Atlanta, Ga., Ronald Richards, Borg Warner Acceptance Corp., Tifton, Ga., Lewis R. Hassett, Annette D. Kerlin, Atlanta, Ga., for appellees.

## ORDER

BOWEN, District Judge.

Before the court is an appeal from an order of the bankruptcy judge for the Southern District of Georgia, entered February 8, 1984, in which he sustained the appellees' ("creditors") objections to the appellants' ("debtors") reorganization plan and dismissed the debtors' Chapter 11 petition. Two questions are presented to this Court on appeal: (a) whether the bankruptcy judge erred in sustaining the creditors' objections to the debtors' second reorganization plan; and, (b) whether the bankruptcy judge erred, under the facts of this case, in dismissing the debtor's Chapter 11 petition.

## JURISDICTION

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158, which provides in pertinent part:

(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

## STANDARD OF REVIEW

The standard of review to be applied by this court when reviewing the decisions of the bankruptcy judge is set forth in the Bankruptcy Rules:

On appeal the district court ... may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Bankr. Rule 8013, 11 U.S.C.A.

The appropriate standard of review of facts is the "familiar clearly erroneous test." *In re Morrissey v. Arnold*, 717 F.2d 100, 104 (3d Cir.1983). The Court, however, will apply a *de novo* standard of review to the legal questions raised in the bankruptcy judge's order.

## FACTS

The debtors filed their petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174 on June 28, 1982. During the subsequent nineteen months, the debtors filed two different plans for reorganization. Debtors filed their first plan ("First Plan") of reor-

ganization on November 22, 1982. The debtors' First Plan allowed for payments to unsecured creditors of *one percent* of their allowed claims within six months of the effective date of confirmation, with no interest. This First Plan was not confirmed at the February 4, 1983, confirmation hearing.

The debtors' second reorganization plan ("Second Plan") was filed on September 12, 1983. This Plan provided that the claims of all non-priority unsecured creditors [1] shall be settled and satisfied in full by payment of a percentage, if any, of their allowed unsecured claims determined as follows:

(1) At or before confirmation, the Court will determine what portion of Debtor's unencumbered assets is non-exempt and the value thereof.

(2) An amount equal to such value shall be paid to creditors, pro-rata, in 3 equal annual installments beginning June 1, 1984.

(Second Plan at Art. IV, ¶ 4.2). The Second Plan also provided that Borg Warner Acceptance Company's claim

shall be settled and satisfied as hereinafter stated. Debtor may make full or partial pre-payments on any such [claim] without penalty.

.      .      .      .      .

Borg Warner Acceptance Company— shall be settled and satisfied in full by

(1) Payment of the allowed amount of such claim (hereinafter the "Borg Warner Indebtedness"), not to exceed the valuation placed upon claimant's collateral by this Court, in 14 successive semi-annual installments of principal and accrued interest beginning thirty (30) days after the Effective Date and continuing until all principal and interest is paid in full;

(2) Interest shall accrue on the Borg Warner Indebtedness from the Effective Date until paid in full at the non-default rate of interest provided for in the original contract between Debtor and claimant; and

(3) To secure payment of the Borg Warner Indebtedness, claimant shall retain its existing security interest in the personal property owned by Debtor on the date of filing of this Chapter 11 case and described in the Court's Order of August 12, 1983, but shall have no other lien or security interest in any other property of Debtor, now existing or hereafter acquired.

(Second Plan at Art. IV, ¶ 4.1(I)). After notice, a confirmation hearing was held on the Second Plan on November 3, 1983.

Creditors' objections to the confirmation of the debtors' Second Plan were two-fold: 1) The debtors' reorganization was not feasible; and (2) The second reorganization plan was not "fair and equitable" as required by the provisions of Section 1129(b)(2)(B) of the Bankruptcy Code.[2]

---

1. According to Art. II, ¶ 2.4 of the Second Plan, debtors' non-priority unsecured creditors are as follows: Archer Daniels Midland Company; Amoco Oil Company; Chaney-Bush Irrigation Co.; R.A. Hartley & Son; T.J. Smith Oil Company; J.E. Dopson & Sons; NeeSmith Oil Company; Farmers Favorite Fertilizer Company; World AirCraft and Ocmulgee Tractor Company. Debtors expect the Small Business Administration, Mutual Production Credit Association, Jeff Davis Bank, John Deere Company, Commodity Credit Corporation, and Borg Warner Acceptance Company to be included in this class to the extent their claims are wholly or partially unsecured.

2. On appeal, the creditors present three additional reasons why debtors' Second Plan should not have been confirmed by the bankruptcy judge:

a) debtor did not propose the Second Plan in good faith (11 U.S.C. § 1129(a)(3));
b) creditors constitute a class of unsecured creditors that have rejected the Second Plan and that are impaired by the provisions of such plan (11 U.S.C. § 1129(a)(8)); and
c) debtors failed to present to the Court a disclosure statement concerning the Second Plan thereby failing to satisfy the requirements of 11 U.S.C. § 1129(a)(2).

The Court will address the creditors' claims under 11 U.S.C. §§ 1129(a)(3) and (a)(8). There is insufficient evidence in the record for the Court to address the issue of whether debtors actually filed a disclosure statement. The Court, however, need not address this issue because the disposition of this case would be unaffected by whether debtors filed the disclosure statement.

These objections were based on the fact that, from July, 1982, through November, 1983, the debtors continued to operate their farming business, resulting in a net positive cash flow of $23,643.26 for the sixteen months. Annualized, this level of income would amount to $17,732.44, which the bankruptcy judge correctly found to be inadequate even to service the secured debt under the Second Plan. Furthermore, no dividend would be paid to unsecured creditors under the debtors' Second Plan.

## DISCUSSION

A plan for reorganization under Chapter 11 must comply with all of the requirements of Chapter 11 to pass muster for confirmation. 11 U.S.C. § 1129(a)(1). This is so regardless of whether any objections to the confirmations are filed. *In re Toy and Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bkrtcy.S.D.N.Y.1984). Section 1129 provides that:

(a) The court shall confirm a plan *only if all* of the following requirements are met:

(1) The plan complies with the applicable provisions of this title.

(2) The proponent of the plan complies with the applicable provisions of this title.

(3) The plan has been proposed in good faith and not by any means forbidden by law.

(4) Any payment ... to be made ... by the debtor ... for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable;

.    .    .    .    .

(7) With respect to of each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

(8) With respect to each class of claims or interest—

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), or 507(a)(5) of this title, each holder of a claim of such class will receive—

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(C) with respect to a claim of a kind specified in section 507(a)(6) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not ex-

ceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

(11) *Confirmation of the plan is not likely to be followed by the liquidation,* or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. [emphasis added]

■ The bankruptcy judge found that the debtors had proven a net positive cash flow of only $17,732.44 annually, which the judge deduced was "far short of what the debtors would need to serve approximately one-half million dollars in secured debt" under the second reorganization plan. Thus, the judge concluded that this Second Plan was not a feasible solution to the debtors' debt payment obligations. This conclusion was correct. There was no reasonable way for the debtors to meet their financial obligations under the facts as presented. I will return to consider the issue of feasibility.

The class 4 creditors under the Second Plan rejected the plan. Pursuant to 11 U.S.C. § 1129(b), however, the bankruptcy judge still could have confirmed the plan through a concept known in the vernacular of insolvency law as "cram-down." A two-part test must be satisfied before a reorganization can be confirmed under the "cram-down" approach. First, all of the requirements of 11 U.S.C. § 1129(a) must have been satisfied, except for subsection (a)(8). *See supra.* Second, the reorganization plan must be "fair and equitable" with respect to each class of claims or interest that is impaired under, and has not accepted, the plan.

The bankruptcy judge denied the confirmation of the plan under the "cram-down" approach because the plan was not "fair and equitable" with respect to the unsecured creditors. Section 1129(b)(2) provides that a plan is fair and equitable if:

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property.

Debtors' Second Plan provides that unsecured creditors, as an impaired class of claims, shall be

... settled and satisfied in full by payment of a percentage, if any, of their allowed unsecured claims determined as follows:

(1) At or before confirmation, the court will determine what portion of Debtors' unencumbered assets is nonexempt and the portion thereof.

(2) An amount equal to such value shall be paid to creditors, pro rata, in three equal annual installments beginning June 1, 1984.

In the valuation order of August 12, 1983, the bankruptcy judge determined that the debtors had no equity in any of their property. As the bankruptcy judge correctly noted in his order of February 7, 1984, the debtors have no assets that are unencumbered, and consequently, the unsecured creditors will not receive anything under the debtor's Second Plan. The facts are clear. However, the law has been applied imprecisely, albeit to a correct result.

The phrase "fair and equitable" is a term of art in bankruptcy law and is not to be confused with its use in the area of equity. This is not the time for an essay on its different meanings. It will suffice to say that the "fair and equitable" test is not in

issue because the unsecured class of creditors (a) was the most junior of all classes, and (b) would have received nothing in a Chapter 7 liquidation.

In addition, Article VIII, paragraph 8.1 of the debtors' Second Plan provides that:

In the event that all requirements of confirmation have been met except the requirement of 11 U.S.C. Section 1129(a)(8),

(a) The provisions of paragraph 3.3 shall not apply and the interests of the Debtor shall revest on the Effective Date only upon payment of $100 of the reorganized Debtor, and

(b) Debtor requests the Court confirm the plan pursuant to 11 U.S.C. Section 1129(b).

The bankruptcy judge's conclusions regarding the debtor's proposal to "revest" their ownership is worth noting:

Assuming that the Debtors' forecasts [$60,000 net cash flow in 1984] are correct, the Court finds that the Debtors have not met their burden of showing that a payment of $100.00 is a fair equivalent value for the ownership interests of the Debtors (Order of February 7, 1983, at 3).

It is apparent from this language and his comments about the debtors' ability to perform its obligations under the Plan that the bankruptcy judge was firmly convinced that the Plan simply would not work.

Under the former law, § 366 of The Bankruptcy Act, there was a confirmation requirement that the plan of arrangement be "feasible." I have previously alluded to this aspect of feasibility as did the bankruptcy judge. The word "feasible" is not found in 11 U.S.C. § 1129. However, the concept remains. A bankruptcy judge is not required to confirm a plan which will surely fail. Under the present law, feasibility of a plan is explicitly required under 11 U.S.C. § 1129(a)(11)[3] and has been held to be an implied element of the "good faith" requirement for confirmation found in 11 U.S.C. § 1129(a)(3). "In the context of reorganization under Chapter 11, a plan is proposed in good faith if there is a reasonable likelihood that the plan will achieve a result consistent with the standards presented under the Code." (citations omitted). *In re Toy & Sports Warehouse, Inc., supra,* 37 B.R. at 149.

The bankruptcy judge should and did consider the feasibility of the Second Plan. Here the financial realities do not accord with the debtors' projections. The debtors' assumptions have been found to be unreasonable and the fulfillment of the Plan to be unattainable. Accordingly, while the bankruptcy judge has labeled the debtors' failure in terms of a lack of feasibility and an absence of fair and equitable treatment to an impaired class of creditors, in reality the debtors' failure is found in their inability to propose in "good faith" a reorganization plan which is not likely to be followed by liquidation. The Plan will not work and it should not have been confirmed.

### DISMISSAL OF THE CHAPTER 11 CASE

The bankruptcy judge may, pursuant to 11 U.S.C. § 1112(b), dismiss a case under Chapter 11 of the Bankruptcy Code after a request by an interested party, and after notice and a hearing. Among the reasons for dismissing a Chapter 11 case for cause under Section 1112(b) are:

(ii) inability to effectuate a plan;

(iii) unreasonable delay by the debtor that is prejudicial to creditors; and

(iv) denial of confirmation of a proposed plan and denial of additional time for filing under plan or modification of a plan.

---

**3.** As noted in *Matter of Huckabee Auto Co.,* 33 B.R. 141 (Bkrtcy.M.D.Ga.1981),

11 U.S.C. § 1129(a)(11) contains what is oftentimes referred to as the feasibility standard, and to meet this requirement of confirmation, requires a finding of financial stability. This is not a guaranty of success, but a reasonable expectation of success. This requires testimony about capital structure, earning power, economic conditions, ability of management, and in general, any matter relevant to the prospect of success. 5 *Collier on Bankruptcy* ¶ 1129.–02[11] (15th ed. 1981). *Id.* at 145, n. 2.

In the notice of continued hearing on confirmation and order fixing time for filing acceptances or rejections of plan, issued on September 13, 1983, the bankruptcy judge showed that:

> If the plan is not confirmed at said hearing, a hearing will thereupon be held to determine whether the case should be dismissed or converted to Chapter 7.

Amoco, Archer Daniel, and Borg-Warner made motions to dismiss debtors' Chapter 11 case at the confirmation hearing. The bankruptcy judge concluded that, because the debtors had gone nineteen months without proposing an adequate reorganization plan, and had drafted the plans without any input or cooperation of the creditors, the debtors would not be likely to be able to effectuate a plan that would be confirmed regardless of the time allowed. The judge also concluded that nineteen months constituted an unreasonable delay that was prejudicial to the creditors. Consequently, the bankruptcy judge dismissed the Chapter 11 case for cause pursuant to Section 1112 of the Bankruptcy Code.

Having considered the record of the bankruptcy court in this case, this court concludes that the bankruptcy judge's dismissal of the debtors' Chapter 11 petition was proper, required by the facts, and well within his discretion. The record shows that the debtors proposed two reorganization plans during an extended period and that neither plan was adequate. It would be highly prejudicial to all of the creditors to allow the debtors any more time to work on their Chapter 11 case.

This court concludes that the bankruptcy judge's decision to sustain the creditors' objection to the confirmation of the debtors' second reorganization plan was fully supported by the facts as he found them and therefore, not "clearly erroneous." Furthermore, the court concludes that the bankruptcy judge's dismissal of the debtors' Chapter 11 petition was demanded by the evidence in the record and the law.

For these reasons the bankruptcy judge's order of February 8, 1984, is AFFIRMED.