# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 18, 2010

No. 09-41125

Lyle W. Cayce
Clerk

In the Matter of: MARK A. CANTU; ROXANNE CANTU,

Debtors

-------------------------------------------------------------------------

MARK A. CANTU; ROXANNE CANTU,

Appellants

v.

ROMERO GONZALEZ & BENAVIDES L.L.P.; GUERRA & MOORE LTD,
L.L.P.; HOWARD K. GROSSMAN,

Appellees

v.

MICHAEL B. SCHMIDT

Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:09-CV-171

Before DAVIS, WIENER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.

No. 09-41125

Plaintiffs-Appellants Mark and Roxanne Cantu ("the Cantus") filed a Chapter 11 reorganization plan (the "Plan") jointly with their wholly owned corporation, Mar-Rox, Inc. Mark Cantu's law office had been in disarray for quite some time, and has continued to lose money during the bankruptcy. Under the Plan, all pre-petition and post-petition personal injury cases from Cantu's law firm, as well as the Cantus' non-exempt property, would be included in a liquidating trust. The Plan specified, however, that 75% of all post-confirmation cases (and 100% of a specific post-confirmation case) be pledged to one secured creditor, International Bank of Commerce ("IBOC"). Fees from the pre-petition cases would fund the $4 million necessary to satisfy the unsecured claims.

The unsecured creditors refused to vote to confirm the plan. Instead, they filed a motion asking that the Cantus' Chapter 11 bankruptcy be converted to a Chapter 7 liquidation. Accordingly, the bankruptcy court refused to confirm the Plan, citing violations of both the "disposable income" requirement[1] and the "absolute priority" rule,[2] then converted the bankruptcy from a Chapter 11 reorganization to a Chapter 7 liquidation. The Cantus appealed to the district court, which affirmed both the denial of the plan and the conversion of the bankruptcy to Chapter 7. The Cantus further appealed to us.[3] We affirm.

## I. ANALYSIS

## A. STANDARD OF REVIEW

---

R. 47.5.4.

[1] 11 U.S.C. § 1129(a)(15).

[2] 11 U.S.C. § 1129(b)(2)(B)(i).

[3] Mar-Rox, Inc.'s appeal from the bankruptcy court to the district court was dismissed as untimely filed, so that appeal is not before us.

No. 09-41125

We apply the same standard of review as does the district court when it, in its appellate capacity, reviews the bankruptcy court. Like the district court, we review the bankruptcy court's conclusions of law and mixed questions of fact and law *de novo*[4] and its findings of fact for clear error.[5] An order by a bankruptcy court to convert a Chapter 11 reorganization to a Chapter 7 liquidation is reviewed for abuse of discretion.[6] The bankruptcy court need not provide exhaustive reasoning for its decision to convert.[7] We may affirm the bankruptcy court on any grounds supported by the record.[8]

## B. FEASIBILITY

11 U.S.C. § 1129(a) lists the requirements that a debtor must meet to have a bankruptcy court confirm a Chapter 11 plan. Subsection (a)(8) requires that each holder of an impaired claim accept the plan. This subsection was not satisfied here, because numerous impaired unsecured creditors objected. Section 1129(b) allows for a "cramdown" over the objections of the nonconsenting creditors, but only if all provisions of § 1129(a) other than subsection (a)(8) are met. Subsection (a)(11)—commonly known as the "feasibility requirement"—states that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan . . . ." Although the bankruptcy

---

[4] *AT&T Universal Car Servs. v. Mercer* (*In re Mercer*), 246 F.3d 391, 402 (5th Cir. 2001).

[5] *Id.*

[6] *Koerner v. Colonial Bank* (*In re Koerner*), 800 F.2d 1358, 1368 (5th Cir. 1986).

[7] *Id.*

[8] *Plunk v. Yaquinto* (*In re Plunk*), 481 F.3d 302, 305 (5th Cir. 2007).

No. 09-41125

court and the district court did not address the "feasibility requirement," we conclude that the Plan was not feasible. This conclusion bars a cramdown.

A "plan does not need to guarantee success, but it must present reasonable assurance of success."[9] A plan may not be speculative[10] or be based on unreasonable assumptions.[11] After a thorough review of the record, we remain unconvinced that this Plan provided for a reasonable assurance of success or that it was based on anything more than unreasonable assumptions.

The Plan had to produce a large sum of money from Mark Cantu's law office. All of the proceeds from one case were pledged to IBOC, and 75% of all other post-petition cases were pledged to IBOC until its $2 million lien was paid in full. The fees garnered from the pre-petition cases had to go into the trust to pay off nearly $4 million owed to the unsecured creditors. In addition, Cantu also had to cover substantial on-going overhead and payroll costs for his law office.

There is much evidence that Cantu did not have sufficient funds to finance the prosecution of the many cases necessary for the completion of his plan. Cantu's law office had operated at a net loss during the bankruptcy proceeding, having earned a profit in only one month—a modest profit at that. The Cantus had only $1,843.42 in their bank account as of May of 2009. Cantu had not secured financing for his law office after the Plan, assuming it were approved.

---

[9] *In re Made in Detroit, Inc.*, 299 B.R. 170, 176 (Bankr. E.D. Mich. 2003).

[10] *In re Trevarrow Lanes, Inc.*, 183 B.R. 475, 482 (Bankr. E.D. Mich. 1995).

[11] *Stapleton v. Archer Daniels Midland Co.* (*In re Stapleton*), 55 B.R. 716, 721 (Bankr. S.D. Ga. 1985).

No. 09-41125

Cantu's plans for garnering the fees necessary to satisfy all of the creditors in the Plan was wholly speculative. He intended to transform his law office from one that had litigated large personal injury cases to one that would handle a high volume of primarily "fender bender" cases. Neither did Cantu provide a detailed business plan to explain how his law office would begin to turn a profit.

In light of all the record evidence, we are convinced that the Cantus' Plan simply was not feasible. As such, it did not satisfy § 1129(a)(11), so we affirm the bankruptcy court's refusal to confirm the Plan.

## C. CONVERSION

11 U.S.C § 1112(b) requires a bankruptcy court to convert a Chapter 11 reorganization to a Chapter 7 liquidation if a party in interest[12] establishes "cause." We agree that there was a surfeit of cause for this case to have been converted to a Chapter 7 liquidation, essentially for the same reasons noted by the bankruptcy court. We hold that the bankruptcy court did not abuse its discretion in converting the Cantus' Chapter 11 case to a Chapter 7 liquidation.

## II. CONCLUSION

For the reasons stated above, we agree that the Plan was not confirmable and that the case was correctly converted to a Chapter 7 liquidation. As we decide this case on "feasibility" grounds, we need not, and therefore do not,

---

[12] We agree with the district court that 11 U.S.C § 1112(b) contains its own standing requirement, and any reliance on 11 U.S.C § 303(b) is inapposite. A "party in interest" includes any "creditor." 11 U.S.C § 1109(b). A "creditor" is any entity that has a "claim." 11 U.S.C § 101(10). A "claim" includes "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C § 101(5)(A). Although the claims of the unsecured creditors here are disputed, they are still claims, and the unsecured creditors are parties in interest entitled to invoke 11 U.S.C § 1112(b).

No. 09-41125

address the "disposable income" requirement or the "absolute priority" rule.

AFFIRMED.