Mr. Justice GRIER
 

 delivered the opinion of the court.
 

 The most important question of this case is that of jurisdiction.
 

 It is objected to the act of 27th February, just passed, that it is ineffectual for the purpose intended by it; that it is- a retrospective act interfering directly with vested rights that the result of maintaining it would be to disturb anc impair judgments which, at the time of its passage, were final and absolute; that the powers of Congress are strictly legislative, and this is an exercise of judicial power, which Congress is not competent to exercise. Rut we are of opinion that these objections are not well founded.
 

 The extinction of the Territorial government, and conversion of the Territory into a State under our peculiar institutions, necessarily produce some anomalous results and questions which cannot be solved by precedents from without.
 

 It -cannot be disputed that Congress has the exclusive power of legislation in and over the Territories, and, consequently, that the Supreme Court has appellate jurisdiction over the courts established therein, “ under such regulations as Congress may make.”
 
 †
 
 In the case of
 
 Benner
 
 v.
 
 Porter,
 

 ‡
 

 it'is said: “The Territorial counts were the courts of the General Government, and the records in the custody of their clerks were the records of that Government, and it would seem to follow necessarily from the premises that no one
 
 *174
 
 could legally take possession or custody of the same without tbe assent, express or implied, of Congress.” The act of 22d of February, 1848, chapC e 12, which provides for cases pending in the Supreme or superior court of any Territory thereafter, admitte'd as a State, made no provision for cases pending in this court on writ of error or appeal from a Territorial court. In the ease just mentioned, we have decided' that it required, the concurrent legislation of Congress and the State legislature, in cases of appellate State jurisdiction, to transfer such cases from the old to the new government.
 

 The act of Congress admitting the State of Nevada omitted to make such provision, although the Constitution of Nevada had provided for their reception. Now," it has not been and cannot be denied, that if the provisions of the act now under consideration had been inserted in that act, the jurisdiction of this court to decide this case could not have been'questioned.
 

 By this omission, cases like the present were left in a very anomalous situation. The State could not,
 
 proprio vigore,
 
 transfer to its courts the jurisdiction of a case whose record was removed to this court, without the concurrent action of Congress. Until such aetiou was taken, the case was suspended, and the parties left to renew their litigation in the State tribunal. What good reason can be given why Congress should not remove the impediment which suspended the remedy in this case between two tribunals, neither-of which could afford relief? What obstacle was in the way of legislation to supply the omission .to make provision for such cases in the original act? If it comes within, the category of retrospective legislation, as has been argued, we find nothing in the Constitution limiting the power of Congress to amend or correct omissions in previous acts. It is well settled that where there is no direct Constitutional prohibition, a State may' pass retrospective -laws, such as, in their operation, may affect suits pending, and give to a party a remedy which he did not previously possess, or modify an existing remedy, or remove an impediment in the way oí
 
 *175
 
 legal proceedings.
 
 *
 
 Tbe passage of tbe act now in question was absolutely necessary to remove an impediment in tbe way of any legal proceeding in tbé case.
 

 Tbe omission to provide for this accidental impediment to tbe action of tbis court, did not necessarily amount to tbe affirpnance of tbe judgment, and it is hard to perceive wbat vested right tbe defendant in error bad in baying tbis case suspended between two tribunals, neither.of which could take jurisdiction of it; or tbe value of such* a' right, if be was vested with it. If either party could be said to have a vested right, it was plaintiff in error, who bad . legally. brought bis case to tbis court for review; anclwhose remedy bad been suspended by an accident, or circumstance, over which be bad no control. If tbe judgment below was erro ■ neous, tbe plaintiff in error bad a moral right at least to have it set aside, and tbe defendant is only claiming a vested right in a wrong judgment.
 
 “
 
 Tbe truth is?’ says Chief Justice Parker, in
 
 Foster
 
 v.
 
 Essex
 
 Bank,
 
 †
 
 “ thpre is no such thing as a vested right to do wrong, and tbe legislature which, in its acts, not expressly authorized -by the Constitu-' tion, limits itself to correcting mistakes and to providing remedies for tbe furtherance of justice, cannot be charged with violating its duty, or exceeding its authority.” Such acts are of a remedial character, and aré tbe peculiar subjects of legislation. They are not liable to tbe imputation of being assumptions of judicial power.
 

 Tbe constitutional difficulty attempted to be raised on tbe argument, that Congress cannot authorize tbis court to issue a mandate to a State court, in a mere matter of State jurisdiction, is factitious and imaginary. It is founded on tbe assumption, that all tbe questions which we have heretofore, decided are contrary to law, and is but a repetition of the former objections which baye been overruled by tbe court under another form of expression. - For if. it be true, as we
 
 *176
 
 have shown, that Congress alone had the power of disposing, of the Territorial records, and providing for the further remedy in the newly organized courts — if it requires the concurrent legislation of both Congress and the State to dispose of the cases in the peculiar predicament in which this case was heard — if Congress had, as we have shown, the power to remove the impediments to its decision, and remit it to a State court authorized by the constitution of the State to take cognizance of# they must necessarily regulate the' conditions of its Jyal, so that the parties may have their just remedy respectively. If a State tribunal could ndttake possession of the record of a court removed legally to this court, nor exercise jurisdictionjn the case without authority of Congress (as we have decided), without the legislation'of Congress, they must necessarily accept and exercise.it subject to the conditions imposed by the act which authorizes them to receive the record. This court would have the same right to issue its mandate as in cases where -we have jurisdiction over the decisions of the State courts, under the 25th section of thé Judiciary Act, and for the same reasons, — because we have jurisdiction to hear and decide the ease.
 

 II. Having disposed of the question of jurisdiction, the case presents no difficulty.
 

 As to the case made on the motion for a new trial: our decision has always been, that the granting or refusing a new trial is a matter of discretion with the court below, which we cannot review on writ of error.
 

 The single bill of exceptions in the case is to the refusal of the court to receive certain letters in evidence. The defendants were charged to have been partners of one Greoi’ge N. Shaw, or to have held themselves out to the public as such. This was the only issue in the case. To rebut the plaintiffs’ proof, the defendants offered a correspondence .between themselves, and some letters to them by one Eaton, >their agent. It is hard to perceive' on what grounds the parties should give their private conversations or correspondence with one another or their agent to establish their own ease, or show that they had not held themselves out to the
 
 *177
 
 public as partners of the deceased; .. Let judgment of afih’mance be entered in the case, and a statement of this decision be certified to the Supreme Court of Nevada.
 
 *
 

 AFFIRMANCE AND CERTIFICATE ACCORDINGLY.
 

 †
 

 Constitution, Art. 3s
 

 ‡
 

 9 Howard, 235.
 

 *
 

 See Hepburn
 
 v.
 
 Curts, 7 Watts, 300, and Shenly
 
 v.
 
 Commonwealth, 36 Pennsylvania State, 57.
 

 †
 

 16 Massachusetts, 245; and see Rich
 
 v.
 
 Flanders, 39 New Hampshire,
 

 *
 

 See Webster
 
 v.
 
 Reid, 11 Howard, 461.