CLARK, Chief Judge:
 

 Louis Koerner brought two appeals to this court which we consolidated for argument. The first appeal, No. 85-3341, seeks to reverse the district court’s interim order rejecting his constitutional challenge to the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353,
 
 *1360
 
 1984 U.S.Code Cong.
 
 &
 
 Ad.News (98 Stat.) 333 (the 1984 Act) and remanding the cause to the bankruptcy court. The second appeal, No. 85-3727, contests the district court’s final order dismissing Koerner’s appeal from the bankruptcy court’s order converting the Chapter 11 proceeding to a Chapter 7 involuntary liquidation. We dismiss the appeal in cause No. 85-3341 for lack of jurisdiction. We affirm the district court’s order dismissing the appeal in cause No. 85-3727.
 

 I. BACKGROUND
 

 Louis R. Koerner, Jr., filed a voluntary petition for reorganization under Chapter 11 of Title 11, United States Code. The matter was referred to the bankruptcy court under the district’s interim rule of reference.
 
 [1]
 
 The matter was assigned to Bankruptcy Judge Thomas H. Kingsmill, Jr. The bankruptcy court subsequently granted the motion of a creditor, Colonial Bank, to convert the case to an involuntary liquidation proceeding under Chapter 7. Koerner moved the bankruptcy court for reconsideration of the order of conversion or for a new trial. He also requested “a determination of the unconstitutionality of the bankruptcy laws ... [and the] authority [of] Hon. T.H. Kingsmill to exercise the powers of a bankruptcy judge.”
 

 Koerner also moved the district court to withdraw the reference to the bankruptcy court so that he might present his constitutional challenge to the 1984 Act to the district court. The district court promptly withdrew its reference of the matter to the bankruptcy court. The district court subsequently rejected Koerner’s constitutional challenge and referred the case back to the bankruptcy court for further proceedings. Koerner filed a timely notice of appeal to this court from the district court’s order. The Department of Justice, appearing on behalf of the United States Executive Branch, intervened pursuant to 28 U.S.C. § 2403(a) to support Koerner’s challenge on appeal. In response, the United States Senate and the House Bipartisan Leadership Group intervened to defend the constitutionality of the 1984 Act. Amici in support of the Act are Bankruptcy Judges Lundin, McFeeley, Paine, Robinson, and Votolato.
 

 Following the order referring the cause, the bankruptcy court denied Koemer’s motion to reconsider its order of conversion or, in the alternative, for a new trial. Koerner appealed that order to the district court. The district court dismissed the appeal and Koerner filed his second appeal here from the district court’s final order of dismissal.
 

 II. APPELLATE JURISDICTION
 

 A. Cause No. 85-3341
 

 The appeal to this court in No. 85-3341 is dismissed for lack of jurisdiction. 28 U.S.C. § 158(d) vests courts of appeals with jurisdiction over all final decisions of district courts rendered on appeals from bankruptcy courts. The order of the district court from which this appeal was taken was an original order of that court. It was not entered on an appeal from the bankruptcy court.
 

 28 U.S.C. § 1291 provides appellate jurisdiction over final orders which end the litigation on the merits and leave nothing for the court to do but execute the judgment.
 
 Thompson v. Betts,
 
 754 F.2d 1243, 1245 (5th Cir.1985) (quoting
 
 Coopers & Lybrand v. Livesay,
 
 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)). The rejection of Koemer’s constitutional challenge to the 1984 Act was not a final order. It did not end this litigation on the merits. Rather, it returned the matter to the bankruptcy court for further proceedings.
 

 This order does not fall within the collateral order doctrine. This court may review a nonfinal order of a district court if the order “conclusively determine^] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreview
 
 *1361
 
 able on appeal from a final judgment.”
 
 Coopers & Lybrand v. Livesay,
 
 437 U.S. at 468, 98 S.Ct. at 2458;
 
 Cohen v. Beneficial Industrial Loan Corp.,
 
 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). The district court’s order affirming the constitutionality of the 1984 Act fails to meet the third requirement because it remains effectively reviewable on appeal from the final judgment in No. 85-3727. This disposition makes our adjudication in No. 85-3341 consistent with that of the Ninth Circuit in
 
 In re: Benny,
 
 791 F.2d 712 (9th Cir.1986).
 

 B. Cause No. 85-3727
 

 This court has jurisdiction to hear and decide No. 85-3727. The final order of the district court appealed from in No. 85-3727 was rendered on an appeal to it from an order of the bankruptcy court under 28 U.S.C. § 158(a). This court is clearly vested with jurisdiction over the district court order dismissing Koerner’s appeal from the bankruptcy court’s decision to deny his motion for reconsideration or for a new trial under 28 U.S.C. § 158(d).
 

 Although we lack jurisdiction to hear the appeal from the district court’s order rejecting Koerner’s constitutional challenge, the appeal in No. 85-3727 necessarily presents the same issue, both because it implicates the jurisdiction of the bankruptcy court and because the unappealable interim order is now a part of the cause properly appealed to the district court and from that court to this court. Before we can decide the merits of Koerner’s case, we must determine whether Judge Kingsmill was authorized to exercise the powers of a bankruptcy judge under the 1984 Act.
 

 III. STATUTORY BACKGROUND
 

 A brief review of the three major revisions to United States bankruptcy law and procedure since the first bankruptcy law was enacted in 1898 will assist the reader in understanding the 1984 Act. Under the Bankruptcy Act of 1898, district courts were vested with original jurisdiction over bankruptcy proceedings. This was not changed by the 1934 amendments. 11 U.S. C.A.app. § 11. District court judges were empowered to appoint referees in bankruptcy to serve for six years.
 
 Id.
 
 § 62. When a referee’s term expired, he would “continue to perform the duties of his office until his successor is appointed and qualifies.”
 
 Id.
 
 The Bankruptcy Reform Act of 1978 (the 1978 Act) repealed these provisions. Pub.L. No. 95-598, § 401(a), 1978 U.S.Code Cong. & Ad.News (92 Stat.) 2549.
 

 Section 201 of the 1978 Act established a “United States Bankruptcy Court” in each judicial district “as an adjunct to the district court for such district.” It provided that bankruptcy judges were to be appointed by the President for terms of fourteen years but that a judge could continue to perform the duties of the office “until his successor takes office.” Title IV provided a transition period of five years and five months following the date of enactment, Nov. 6, 1978. During this period, each referee in bankruptcy then serving would continue to serve for the remainder of his appointed term unless found not qualified by the Chief Judge of the Circuit in consultation with a merit screening committee. The terms of referees found qualified were to be extended through the end of the transition period, March 31, 1984, and, on expiration of their appointed terms as referees, these successfully screened officials were designated bankruptcy judges.
 

 The 1978 Act contained two holdover provisions. The first, § 404(b), states that “[t]he term of a referee in bankruptcy who is serving on the date of enactment of this Act is extended to and expires on March 31, 1984 or when his successor takes office.” The second holdover provision, § 404(d), incorporated § 34(a) of the prior law which provided: “[u]pon the expiration of his term, a referee in bankruptcy shall continue to perform the duties of his office until his successor is appointed and qualifies— ” 11 U.S.C.A.app. § 62(a).
 

 By a series of Extension Acts, the expiration date of the transition provisions of the 1978 Act was extended four times to April
 
 *1362
 
 30, 1984, May 25, 1984, June 20, 1984, and June 27,1984. Then, finally, it was extended to “the day before the date of enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984” by the 1984 Act. § 121(b). The four short-term acts extending the duration of the transition period, Pub.L. No. 98-249, 98 Stat. 116 (Mar. 31,1984); Pub.L. No. 98-271, 98 Stat. 163 (Apr. 30, 1984); Pub.L. No. 98-299, 98 Stat. 214 (May 25, 1984); Pub.L. No. 98-325, 98 Stat. 268 (June 20, 1984), had two relevant sections. Section 1(b) of the initial extension statute amended § 404(a) and (b) of the 1978 Act by striking out March 31, 1984 and inserting April 30, 1984. Each of the succeeding statutes contained a § 1(b) which substituted a later date. Section 2 of each statute extended the term of office of any bankruptcy judge serving on that date or on the date of enactment of the act.
 

 Section 406 of the 1978 Act provided that studies and surveys concerning the number and location of new bankruptcy judgeships were to be made by the Administrative Office of the United States Courts with reports to circuit judicial councils and the Judicial Conference of the United States. The Conference was required to recommend to Congress and the President the number and location of bankruptcy judges. While the judicial studies, surveys, and recommendations were completed as required, no Congressional designations of actual judgeships or locations were ever made. During the transition period, the previously existing bankruptcy courts continued to operate. They were staffed, in large part, by the incumbent referees who continued to serve either as referees or as bankruptcy judges.
 

 The 1984 Act designated a total of 232 bankruptcy judgeships for service in specifically fixed numbers in 90 federal district courts. Bankruptcy judges were to be appointed to fourteen-year terms by the respective United States Court of Appeals in which the district court was located. § 104.
 

 IV. THE CONSTITUTIONAL ISSUE
 

 The appellants center their constitutional attack on two sections of the 1984 Act. In the first, the term of office of each bankruptcy judge serving on the date of enactment of the 1984 Act was extended to and expired four years after the date of his last appointment or October 1, 1986, whichever was later. § 106(a). In a second provision, the term of office of any bankruptcy judge serving on June 27, 1984 was extended to and expired upon the date of enactment of the 1984 Act. § 121(e).
 

 Appellants challenge the retroactive extension of the term of office contained in § 121(e) and the prospective extension of office found in § 106(a) of the 1984 Act as contrary to the Appointments Clause of the Constitution, Art. II, § 2, cl. 2. That clause provides:
 

 [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.
 

 The clause functions as an integral part of the fundamental concept of separation of powers. It proscribes any coupling of the legislative power to create governmental offices with the power to select officers to fill those positions. The separation of powers doctrine incorporated throughout the Constitution
 
 [2]
 
 is a safeguard against aggrandizement of one branch of the federal government at the expense of the other.
 
 Buckley v. Valeo,
 
 424 U.S. 1, 122, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976). The de
 
 *1363
 
 bates of the Constitutional Convention, and the Federalist Papers, are replete with expressions of fear that the legislative branch of the National Government will arrogate power to itself at the expense of the other two branches.
 
 Id.
 
 at 129, 96 S.Ct. at 687.
 

 The district court declined to hold either section of the 1984 Act unconstitutional. It rejected Koerner’s basic premise that the terms of office of bankruptcy judges ended on June 27, 1984. The court held that the holdover provisions in § 404(b) and (d) of the 1978 Act operated to extend the bankruptcy judges’ terms of office until the appointment of their successors. Because the terms of office did not end on June 27, 1984, but continued until July 10, 1984, the possibility of having to give retroactive effect to § 121(e) of the 1984 Act was avoided. Thus, the district court held that Bankruptcy Judge Kingsmill who heard and decided this case was properly continued in office and authorized to exercise the powers of a bankruptcy judge in this matter.
 

 V. CONTENTIONS OF THE PARTIES
 

 Koerner challenges the bankruptcy judges’ authority to act on the grounds that there is no fair construction of the 1978 Bankruptcy Act, as amended, that would permit the court to conclude that bankruptcy judges were authorized to hold over in office after June 27, 1984. He argues that the holdover provisions of § 404(b) and (d) of the 1978 Act were repealed by the after-enacted Extension Acts which preempt and supercede § 404(b) and (d). If the terms of the bankruptcy judges did not expire on June 27, he claims that there would have been no need to adopt § 121(e) of the 1984 Act because it deals with the same subject as the various Extension Acts. Koerner maintains, however, that even if the 1978 Act had authorized bankruptcy judges to hold over, the constitutional issue cannot be avoided because an office occupied by a holdover is vacant as a matter of law and can only be filled by appointment. Those appointments were made by Congress under §§ 106(a) and 121(e) of the 1984 Amendments which operate in conjunction to retroactively void that vacancy and appoint the holdover incumbents as their own successors in office.
 

 The Department of Justice supports Koerner’s statutory argument and enlarges upon his constitutional analysis by asserting that any person holding office and exercising significant authority under the laws of the United States is an officer of the United States and must be appointed to that position in the manner prescribed by the Appointments Clause of the Constitution. Because the Supreme Court has construed that clause to mean that Congress may not, directly or indirectly, designate who will serve as an officer of the United States, Congress could not, through the operation of §§ 106(a) and 121(e), purport to fill the bankruptcy judgeship positions with the judges serving during the transition period. When those judges’ terms of office expired and their offices terminated, they ceased being bankruptcy judges and could not again become bankruptcy judges except by new appointment made pursuant to Article II. The Department of Justice views §§ 106(a) and 121(e) of the ■ 1984 Amendments as a legislative circumvention of the strictures of Article II because those sections of the Act made bankruptcy judges officers of the United States once again, even though their selection was accomplished, not by either of the two constitutionally prescribed methods, but by legislative command.
 

 Koerner’s creditor, Colonial Bank, the United States Senate, and the Amici Bankruptcy Judges reply that there was no need for the district court to address the constitutional question because the district court’s interpretation of the holdover provisions, although not the only possible statutory construction, is the most coherent interpretation and the only one that satisfies the fundamental requirement that courts construe statutes so as to avoid unnecessary constitutional adjudication. They view the Extension Acts as statutes enacted by Congress to preserve the continuity of the bankruptcy system pending enactment of the 1984 Act which explicitly
 
 *1364
 
 amended § 404 of the 1978 Act to retain the holdover provisions. If this court does reach the constitutional issue, however, they contend that it should reject the challenge to the Act because § 121(e) was a valid retroactive extension of the judges’ terms and was not an invalid legislative appointment.
 

 The Speaker and Bipartisan Leadership Group of the House of Representatives defend the constitutionality of the Act on two bases. First, they say Congress has a well-recognized power to extend the terms of appointees, especially in the aid of smooth judicial transitions. Second, because judicial transitions require a complex and sometimes controversial process, and Congress occasionally does not complete all of the steps prior to the transition, it may be permitted to legislate after the fact. They contend that the
 
 Benner-Freeborn
 
 doctrine
 
 [3]
 
 sustains the constitutionality of statutes which retroactively cure gaps in judicial transitions. That doctrine, they say, should apply unless it contravenes a constitutional provision with a direct prohibition against retroactivity, such as the
 
 ex post facto
 
 clause, and the Appointments Clause includes no such direct prohibition.
 

 VI. DISCUSSION
 

 A. Statutory Construction
 

 The cardinal purpose of a court in construing statutes is to determine the intent of Congress. The intent of the 1978 and 1984 Acts is boldly plain. The fundamental intent was to preserve, improve, and restructure the bankruptcy system. Equally apparent is the intent that bankruptcy courts were always to exist with the least possible disruption of function. A fair reading of the transition provisions of the 1978 and 1984 Acts and their legislative history discloses that the office of referee in bankruptcy and bankruptcy judge was not to be abolished. Rather, the incumbents were to be continued in office during the phase of transition and until the appointing power replaced them by designating new officers for new offices.
 
 [4]
 

 Congress recognized an imperative need of the bankruptcy system to maintain the cadre of experienced referees and judges then serving until the designated appoint
 
 *1365
 
 ing power could fill newly created offices. This is most dramatically demonstrated by reconstructing the actual operation of the legislation. The appendix to this opinion traces by name and tenure the various persons who staffed these courts before, during, and after the enactment of these Acts. It demonstrates how the experience and continued service of the duly appointed incumbents continued through the transition periods under both Acts. The appendix further reflects that sources outside the Congress appointed every one of these officers. All that the Congress did was to extend the period of their service. This was done once, albeit briefly, by retroactive action to cover the 13 day “gap” period.
 

 1. The 1978 Act
 

 Like most legislation, the 1978 Act was the product of compromise. A corps of Article III judges exercising bankruptcy jurisdiction in bankruptcy courts wholly separate from district courts was desired by some legislators. Article I judges serving as “adjuncts” or “departments” of district courts were desired by others. In the final version of the 1978 Act, the judicial officers were continued as adjunct Article I appointees but were given broad Article III powers.
 

 Initially, the incumbent referees in bankruptcy were to be phased in as bankruptcy judges after undergoing merit selection panel scrutiny. § 404(b). After a transition period of approximately five and one-half years, the appointing power was to be placed in the President to name bankruptcy judges to 14-year terms. However, before the effective date for presidential appointments arrived and before the number of judges and their locations were determined by Congress, the Supreme Court struck down the 1978 Act’s broad grant of jurisdiction to bankruptcy courts as unconstitutionally conferring Article III power on Article I judges.
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).
 

 2. The 1984 Act
 

 The
 
 Marathon
 
 decision prompted renewed Congressional deliberations over how to revamp the bankruptcy system. The Extension Acts were passed to allow more time to resolve the differences between the Senate and House attempts to deal with
 
 Marathon. See
 
 130 Cong.Rec. H4842 (daily ed. May 24, 1984) (remarks of Rep. Frenzel); 130 Cong.Rec. S3501 (daily ed. Mar. 30, 1984) (remarks of Sen. Heflin). Congress was working out the final details of the new system when
 
 National Labor Relations Board v. Bildisco & Bildisco,
 
 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) was decided. The Supreme Court ruled in
 
 Bildisco
 
 that companies in bankruptcy reorganization could unilaterally cancel their collective bargaining agreements.
 

 The timing of such a major and unsettling court decision as
 
 Bildisco
 
 resulted in a gap from June 27 to July 10 in the times of extension. This hiatus between the end of the final Extension Act and the effective date of the 1984 Act obviously did not come about through legislative design. It must be attributed to efforts to reconstruct complicated legislation, to resolve House and Senate differences, and to respond to the legislatively volatile labor issues created by
 
 Bildisco.
 
 Once the gap came about, it is clear that Congress intended to cure it by a retroactive extension, not to usurp the appointing power, but to continue the theme of transferring judicial power by extending existing, experienced judicial officers until new appointments could be made.
 

 It would mock the purpose of legislative construction to apply a standard rule of construction that would indicate Congress ever intended to lapse the office of bankruptcy judge or to end the terms of any incumbent. Congress obviously was doing its very best to preserve the system and its function. Given this intent, we must look for a reasonable construction of the statutes enacted under which the office of bankruptcy judge would not cease to exist during this time.
 

 
 *1366
 
 Under the construction we adopt, there was no break in service because the term of a bankruptcy judge serving under § 404(b) of the transition provisions of the 1978 Act, as extended, was to expire on June 27, 1984 “or when his successor takes office.” No successors were ever named, attempted to be named, or could have been named since there was no appointing authority at that time. The President’s appointment authority, which had been intended to become effective at the end of the transition period,
 
 see
 
 1978 Act, §§ 201(a), 402(b), did not become effective on June 28, 1984, or ever. Before the President’s appointment authority could become effective, the 1978 Act required legislation “to establish the appropriate number of judgeships.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 290 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6246. Congress did not authorize any new bankruptcy judgeships until it enacted the 1984 Amendments on July 10, 1984. On the same date, Congress repealed the presidential appointing authority, 1984 Act, § 113, and gave the power of appointment for bankruptcy judges to the courts of appeals, § 104(a). Accordingly, Congress never activated the contemplated presidential appointing authority.
 

 The authority of the district courts to appoint bankruptcy judges had lapsed on June 27, 1984, 1978 Act, § 404(d), as amended by § 1(b) of the Extension Acts (extending transition period through June 27, 1984). The current authority of the courts of appeals to appoint bankruptcy judges did not come into existence until July 10, 1984. 1984 Act, §§ 104(a), 122(a). Thus, during the thirteen days in which the incumbent judges were holdovers, no entity had the authority to make new appointments.
 

 Since the alternative expiration of a serving bankruptcy judge’s tenure did not occur, he remained in office until the 1984 Act took effect. Such a construction is reasonable, harmonious with obvious Congressional intent, and does not conflict with the Appointments Clause. We adopt it.
 

 Appellants claim that the specific extension of a term of office in § 2 of the Extension Acts
 
 [5]
 
 controls over the § 404(b) extension of the term granted to an officer because the more narrow section of the statute controls the broader, citing
 
 Busic v. United States,
 
 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). We reject this argument. Applying this rule of statutory construction designed to indicate legislative intent when it is doubtful to the case before us would overcome the transparent intent of Congress, not assist in finding it.
 
 [6]
 

 B. Constitutionality
 

 Our discussion of the principles of statutory construction and the decision we reach there may be sufficient to affirm the portion of the decision of the district court that underlies the jurisdiction of'the bankruptcy judge to make the decision in this cause. Were this not an extraordinary case, involving as it does the validity of literally hundreds of thousands of cases and controversies and the work of hundreds of judges in the federal court system, we would leave the decision there and avoid any hint of constitutional adjudication. But it is such an extraordinary case. Furthermore, the constitutional principle is extremely limited, factually uncomplicated, and its straightforward application is no more than an analogue of the statutory decision already announced.
 

 Congress has the constitutional power to make reasonable changes in the
 
 *1367
 
 duties of any office it creates, including shortening or lengthening the term of service.
 
 See Crenshaw v. United States,
 
 134 U.S. 99, 106, 10 S.Ct. 431, 433, 33 L.Ed. 825 (1890); and
 
 Shoemaker v. United States,
 
 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170 (1893). Such action does not transgress the Appointments Clause. Obviously, it is possible to suggest changes of such duration or condition as could impair the appointment power. Under the limited circumstances of this case, it is clear that the action of Congress was a constitutionally reasonable change in the term of an existing office. We decide only the case before us and expressly disavow any adjudication of other, hypothetical changes in duties or terms of an office.
 

 We further hold that under the circumstances of this case, it is constitutionally possible for Congress to make this change on a retroactive basis. The gap was minimal. Its occurrence was plainly accidental and the response was both consistent with past action and reasonable. Finally, we note that no executive or judicial appointing authority was empowered to name bankruptcy judges during this period. Again, we disclaim any intent to adjudicate the constitutional effect of all possible complications that might result from a longer retroactive extension under any different circumstances.
 

 To the remote extent the Appointments Clause can be said even to be implicated in this scenario, there was no Congressional intent to violate it. Congress sought to preserve a viable bankruptcy court system until the type of judgeship, term, and location it had decided upon could be implemented. “[T]he effect of the 1984 Act [was] to continue in office properly appointed judicial officers, and not to select or appoint new individuals to judicial office.”
 
 In re Tom Carter Enterprises, Inc.,
 
 44 B.R. 605, 608 (C.D.Cal.1984).
 

 We agree with the district court’s conclusion that Congressional actions in extending bankruptcy judges’ terms of office are not invalid legislative appointments. Because Congress did not usurp the appointment prerogative of the executive or judicial branches of the federal government or upset the constitutional symmetry among the branches, neither the 1978 Act, the Extension Acts, nor the 1984 Act constituted an exercise of the appointment power in violation of the Appointments Clause.
 

 Judge Kingsmill was validly acting as a bankruptcy judge when he heard and decided this case. The district court had jurisdiction to enter the final judgment it did and we have jurisdiction of this appeal.
 

 VII. THE MERITS
 

 Having determined that Judge Kingsmill was authorized to exercise the powers of a bankruptcy judge, we turn to the merits of this particular case. Koerner appeals the district court’s dismissal of his appeal of the bankruptcy judge’s decision to deny reconsideration of his conversion order or a new trial on that issue.
 

 Legislative history surrounding this section of the Bankruptcy Act indicates that in acting upon a request for conversion, the bankruptcy court is afforded wide discretion.
 
 [7]
 
 Koerner argues that the bankruptcy court erred in ordering conversion from Chapter 11 to Chapter 7 because the bankruptcy judge did not have adequate facts and information upon which to exercise that discretion. Specifically, he complains that neither the bankruptcy court nor the district court held a hearing or made a ruling on two motions that bear on the adequacy, feasibility, and practicability of his plan of reorganization. The first was the Motion to Determine Property of the Estate and the second was the Motion for Appraisal of the principal asset of the estate. Because the reasons given for the bankruptcy court’s order do not mention the equity in the estate or the determination of property values, Koerner submits
 
 *1368
 
 that the bankruptcy court failed to consider these factors, rendering its order unfair and inequitable.
 

 Koemer’s argument is not well taken. The bankruptcy judge is not required to give exhaustive reasons for his decision. He is only required to comply with 11 U.S.C. § 1112(b)(2) which provides that the court may convert a reorganization proceeding to a straight bankruptcy for cause including “(2) inability to effectuate a plan; [and] (3) unreasonable delay by the debtor that is prejudicial to creditors.” The court specifically noted that it had given the debtor every opportunity to submit feasible plans over a 16 month period. Instead, Koerner submitted what the bankruptcy judge described as a nebulous plan based on projected legal fees that was neither adequate, feasible nor practicable and would not result in a reorganization.
 

 The record does not indicate that the bankruptcy court abused its discretion. Koerner failed to submit an effectual plan and the court found that any additional continuance of the proceedings would be detrimental to the parties. Either of these two grounds was cause for conversion. The judgment appealed from is
 

 AFFIRMED.
 

 Tab A-l
 

 Former Bankruptcy Judges Who Were Serving On November 6, 1978
 

 Name Term of Office Reason
 

 Arnold M. Adams (AR) 01/02/62-11/07/82 Deceased
 

 Charles A. Anderson (OH-S) 11/16/61-02/28/85 Retired
 

 Roy Babitt (NY-S) 12/21/64-07/31/82 Retired
 

 Charles W. Baker (AR) 02/01/73-03/25/84 Resigned
 

 Frank R. Barker (MO-W) 03/01/69-11/30/85 Retired
 

 John E. Bergener (CA-C) 08/16/55-11/30/83 Retired
 

 Joseph J. Betley (NH) 10/18/45-08/22/83 Deceased
 

 Stewart E. Bland (KY-W) 02/11/75-05/31/82 Resigned
 

 John R. Blinn (TX-S) 01/08/75-01/31/82 Resigned
 

 Harold H. Bobier (MI-E) 09/01/61-09/30/82 Retired
 

 Gene E. Brooks (IN — S) 03/01/68-10/16/79 Resigned*
 

 Conley S. Brown (CA-N) 01/01/59-06/01/86 Retired
 

 William G. Caffey, Jr. (AL-S) 01/16/70-12/31/84 Retired
 

 Hugh M. Caldwell (AZ) 10/16/60-05/03/83 Deceased
 

 Ezra H. Cohen (GA-N) 04/01/76-06/30/79 Resigned
 

 Stephen B. Coleman (AL-N) 09/15/38-04/16/85 Retired
 

 Herman W. Coolidge (GA-S) 07/01/75-05/30/86 Retired
 

 Joseph V. Costa (NY-E) 03/01/64-07/11/80 Deceased
 

 Basil H. Coutrakon (IL-C) 05/01/46-11/30/85 Retired
 

 David L. Crawford (NE) 10/05/73-06/28/85 Resigned
 

 Conrad K. Cyr (ME) 07/01/61-10/01/81 Resigned*
 

 Edward E. Davis (AZ) 09/12/69-05/01/81 Resigned
 

 D. Joseph DeVito 03/06/72-04/07/86 Deceased
 

 Jacob Dim (MN) 12/01/63-07/06/82 Deceased
 

 Name Term of Office Reason
 

 Barney E. Eaton, III (MS-S) 11/01/68-01/14/86 Resigned
 

 Lawrence Fisher (IL-N) 08/01/72-10/15/84 Resigned
 

 Edwin F. Flowers (WV-S) 01/12/77-10/12/83 Resigned
 

 Ernest J. Flowers (TX-N) 09/01/72-09/15/83 Resigned
 

 John C. Ford (TX-N) 05/13/61-09/03/85 Retired
 

 John J. Galgay (NY-S) ' 07/01/73-05/27/84 Deceased
 

 Dean M. Gandy (TX-N) 10/01/70-06/01/83 Resigned
 

 Leonard C. Gartner (OH-S) 07/02/62-05/30/82 Deceased
 

 Lloyd D. George (NV) 02/28/74-05/03/84 Resigned*
 

 Gerald K. Gibson (PA-W) 07/01/55-06/12/85 Deceased
 

 Paul W. Glennon (MA) 03/01/62-02/28/86 Retired
 

 Glenn J. Goldbum (MD) 11/02/72-08/11/81 Resigned
 

 Bert M. Goldwater (NV) 10/01/64-05/31/82 Retired
 

 Orville Gray (MT) 05/25/55-07/09/84 Retired
 

 Harry G. Hackett (MI-E) 07/01/57-06/24/81 Retired
 

 L. Warden Hanel (WA-E) 09/14/73-11/15/81 Retired
 

 Philip Hickson (VA-W) 07/01/47-08/31/80 Retired
 

 Howard W. Hilgendorf (WI-E) 07/01/59-12/31/81 Retired
 

 Richard W. Hill (NJ) 02/26/75-07/20/84 Resigned
 

 Russell H. Hippe, Jr. (TN-M) 09/28/78-10/01/81 Resigned
 

 Michael R. Hogan (OR) 08/13/73-09/30/80 Resigned
 
 **
 

 William T. Holmes (VI) 11/03/77-07/24/81 Retired
 

 Leon J. Hopper (AL-M) 04/02/56-08/25/84 Deceased
 

 C. Odell Horton (TN-W) t 06/01/76-05/15/80 Resigned
 
 *
 

 Joe D. Huffstutler (TX-E) 01/01/53-09/30/85 Retired
 

 Robert L. Hughes (CA-N) 11/21/68-02/29/84 Resigned
 

 William H. Hyer (CA-C) 02/15/64-05/31/85 Retired
 

 Paul G. Hyman (FL-S) 01/12/71-10/01/79 Deceased
 

 Dale E. Ihlenfeldt (WI-E) 11/01/66-03/31-86 Retired
 

 George R. Iñglish (OK-E) 07/01/65-09/30/83 Resigned
 

 Thomas W. James (IL-N) 07/05/72-10/30/84 Retired
 

 Paul E. Jennings (TN-M) 09/01/72-05/25/82 Resigned
 

 Folger Johnson (OR) 02/01/55-03/31/84 Retired
 

 Robert A. Johnson (MN) 10/01/78-11/30/81 Resigned
 

 Jack C. Jones (MI-W) 09/01/65-11/18/79 Deceased
 

 Joseph O. Kaiser (MD) 01/01/56-03/31/79 Retired
 

 John H. Kamlowsky (WV-N) 10/16/69-07/28/84 Retired
 

 Herbert Katz (CA — S) 05/08/72-03/15/83 Resigned
 

 Glen E. Keller, Jr. (CO) 05/01/74-02/01/82 Resigned
 

 Ellis W. Kerr (OH-S) 02/04/63-04/30/85 Retired
 

 David A. Kline (OK-W) 01/27/69-09/30/82 Retired
 

 Thomas W. Lawless (MA) 07/15/60-12/31/85 Retired
 

 Stanley T. Lesser (NY-S) 01/26/76-09/30/79 Resigned
 

 Joel Lewittes (NY-S) 01/14/77-01/14/83 Resigned
 

 Max J. Lipkin (IL-C) 12/02/74-06/30/85 Retired
 

 William Lipkin (NJ) 07/01/47-04/30/84 Retired
 

 Clarence Luckey (OR) 07/07/61-11/30/83 Retired
 

 Ralph R. Mabey (UT) 02/09/79-07/01/83 Resigned
 

 Vincent D. Maggiore (AZ) 12/01/64-05/31/83 Retired
 

 Leon J. Marketos (NY-N) 07/01/69-06/30/85 Retired
 

 Charles J. Marro (VT) 03/06/41-07/31/85 Retired
 

 Patrick J. McNulty (MN) 11/15/68-02/15/85 Resigned
 

 Richard L. Merrick (IL-N) 01/15/74-08/31/84 Retired
 

 Joseph T. Molitoris (OH-N) 01/22/65-01/21/83 Retired
 

 John P. Moore (CO) 01/15/75-07/01/82 Resigned*
 

 James E. Moriarty (CA-C) 01/21/63-11/09/82 Deceased
 

 Robert B. Morton (KS) 04/27/62-05/02/86 Retired
 

 Algie M. Moseley, Jr. (GA-M) 10/16/83-03/31/86 Retired
 

 Frank R. Murray (TX-N) 12/15/49-12/14/79 Retired
 

 Russell H. Nehrig (IN-N) 11/01/55-06/27/84 Retired
 

 Hartley Nordin (MN) 07/01/66-12/31/83 Retired
 

 William L. Norton, Jr. (GA-N) 12/08/71-04/30/85 Retired
 

 Robert L. Ordin (CA-C) 12/03/73-09/01/83 Resigned
 

 Kenneth G. Owens (MN) 12/01/58-09/24/83 Deceased
 

 W. Joseph Patterson, Jr. (GA-M) 09/01/73-07/31/80 Retired
 

 David H. Patton (MI-E) 03/26/65-01/04/82 Retired
 

 Edward H. Patton, Jr. (TX-S) 11/15/71-08/15/83 Resigned
 

 Phil Peden (TX-S) 01/15/82-02/01/85 Resigned
 

 Bryte M. Peterson (CA-E) 11/28/67-11/27/79 Retired
 

 Aaron K. Phelps (CA-C) 10/15/65-03/31/84 Retired
 

 Harvey H. Posner (LA-M) 11/16/61-02/29/80 Retired
 

 Manuel J. Price (NY-E) 07/01/65-07/31/84 Retired
 

 Oreste L. Puccini, Jr. (MN) 08/22/79-08/01/81 Resigned
 

 Ross M. Pyle (CA-S) 07/14/75-02/28/85 Resigned
 

 Boris Radoyevich (NY-E) 11/28/67-03/31/85 Retired
 

 
 *1369
 
 Name Term of Office Reason
 

 Eugene J. Raphael (MS-N) 01/16/70-04/30/83 Retired
 

 Frederick W. Reyland, Jr. (CA-E) 11/08/67-11/08/79 Retired
 

 William E. Rutledge (OK-N) 10/27/60-05/20/83 Retired
 

 Edward J. Ryan (NY-S) 07/01/63-02/28/85 Retired
 

 William A. Scanland (AZ) 08/18/77-03/01/86 Retired
 

 Bernhard Schaffler (PA-W) 11/03/76-03/31/80 Resigned
 

 Mark Schlachet (OH-N) 10/22/77-10/04/82 Resigned
 

 William M. Schultz (TX-S) 10/01/75-12/21/81 Resigned
 

 John J. Shanahan (MO-E) 12/15/67-03/03/82 Deceased
 

 Robert J. Sidman (OH-S) 07/17/75-05/01/82 Resigned
 

 Amel Stark (NJ) 09/01/69-05/31/85 Retired
 

 William W. Thinnes (IA-N) 03/27/65-09/04/85 Deceased
 

 Bert W. Thompson (TX-W) 02/09/71-05/31/85 Retired
 

 Gordon Thompson (ND) 11/09/65-09/28/79 Removed
 

 R. Lewis Townsend (NY-S) 07/08/63-08/31/79 Retired
 

 Kenneth S. Treadwell (WA-W) 08/07/67-09/01/85 Retired
 

 Robert E. Trevethan (CT) 11/01/49-06/30/70 Retired
 

 William R. Vance (AL-N) 02/07/62-11/30/81 Retired
 

 Harvey D. Walker (MI-E) 10/27/77-10/27/83 Retired
 

 William B. Washabaugh, Jr. (PA-W) 07/20/59-03/22/85 Retired
 

 Roger M. Whelan (DC) 07/01/71-12/31/83 Resigned
 

 Thomas Wood (PA-M) 07/01/78-08/06/82 Retired
 

 Merlin S. Young (ID) 03/01/70-07/01/84 Retired
 

 Tab A-2
 

 Incumbent Bankruptcy Judges Who Were Serving On November 6, 1978
 

 Name District E.O.D.
 

 Frederick A. Johnson Maine 05/01/75
 

 Harold Lavien Massachusetts 08/22/72
 

 James N. Gabriel Massachusetts 12/19/77
 

 William H. Beckerleg Puerto Rico 08/01/78
 

 Antonio I. Hernandez-Rodriguez Puerto Rico 03/01/76
 

 Arthur N. Votolato, Jr. Rhode Island 06/25/68
 

 Robert L. Krechevsky Connecticut 11/01/78
 

 Cecelia H. Goetz New York (E) 08/01/78
 

 C. Albert Párente New York (E) 02/01/72
 

 Robert J. Hall New York (E) 11/22/76
 

 Justin J. Mahoney New York (N) 07/14/69
 

 Howard Schwartzberg New York (S) 04/19/71
 

 Beryl E. McGuire New York (W) 04/01/68
 

 John W. Creahan New York (W) 08/01/77
 

 Edward D. Hayes New York (W) 09/16/74
 

 Helen S. Balick Delaware 05/21/74
 

 Vincent J. Commisa New Jersey 12/01/67
 

 William A. King, Jr. Pennsylvania (E) 12/31/75
 

 Emil F. Goldhaber Pennsylvania (E) 06/29/66
 

 Thomas M. Twardowski Pennsylvania (E) 04/28/75
 

 Thomas C. Gibbons Pennsylvania (M) 03/17/55
 

 Thomas M. Moore North Carolina (E) 11/01/60
 

 Rufus W. Reynolds North Carolina (M) 08/16/46
 

 James B. Wolfe, Jr. North Carolina (M) 08/01/77
 

 Marvin R. Wooten North Carolina (W) 05/01/76
 

 J. Bratton Davis South Carolina 07/01/69
 

 Martin V.B. Bostetter, Jr. Virginia (E) 07/01/59
 

 Hal J. Bonney, Jr. Virginia (E) 01/01/71
 

 Blackwell N. Shelley Virginia (E) 02/02/76
 

 Thomas J. Wilson, III Virginia (W) 09/01/65
 

 H. Clyde Pearson Virginia (W) 03/16/70
 

 Thomas M. Brahney, III Louisiana (E) 07/01/69
 

 Thomas H. Kingsmill, Jr. Louisiana (E) 09/07/71
 

 Francis R. Bernard, Jr. Louisiana (W) 01/01/76
 

 LeRoy C. Smallenberger Louisiana (W) 11/03/54
 

 Joseph C. Elliott Texas (W) 08/04/75
 

 Joe Lee Kentucky (E) 09/01/61
 

 Merritt S. Deitz, Jr. Kentucky (W) 01/31/77
 

 George Brody Michigan (E) 04/14/60
 

 David E. Nims, Jr. Michigan (W) 04/15/55
 

 Laurence E. Howard Michigan (W) 01/14/76
 

 Marvin L. Heitman Michigan (W) 11/08/74
 

 Name District E.O.D.
 

 Harold F. White Ohio (N) 05/01/58
 

 James H. Williams Ohio (N) 06/05/72
 

 John F. Ray, Jr. Ohio (N) 07/01/75
 

 William J. O’Neill Ohio (N) 06/01/61
 

 Walter J. Krasniewski Ohio (N) 09/01/65
 

 Richard L. Speer Ohio (N) 09/02/75
 

 Burton Perlman Ohio (S) 07/22/76
 

 Grady L. Pettigrew, Jr. Ohio (S) 06/22/77
 

 Duane J. Kelleher Ohio (S) 07/01/60
 

 Ralph H. Kelley Tennessee (E) 01/02/69
 

 Clive W. Bare Tennessee (E) 07/01/57
 

 William B. Leffler Tennessee (W) 03/19/71
 

 Larry L. Lessen Illinois (C) 07/01/73
 

 Edward B. Toles Illinois (N) 01/01/69
 

 Charles B. McCormick Illinois (N) 10/14/66
 

 Frederick J. Hertz Illinois (N) 07/31/74
 

 Robert L. Eisen Illinois (N) 05/01/75
 

 Richard N. DeGunther Illinois (N) 07/26/71
 

 James D. Trabue Illinois (S) 10/05/62
 

 Robert K. Rodibaugh Indiana (N) 11/11/60
 

 Robert L. Bayt Indiana (S) 03/07/77
 

 Richard W. Vandivier Indiana (S) 01/02/74
 

 Nicholas W. Sufana Indiana (S) 09/01/64
 

 Charles N. Clevert, Jr. Wisconsin (E) 11/07/77
 

 William H. Frawley Wisconsin (W) 09/01/62
 

 Robert D. Martin Wisconsin (W) 06/01/78
 

 Richard F. Stageman Iowa (S) 05/15/62
 

 John J. Connelly Minnesota 11/01/65
 

 Robert E. Brauer Missouri (E) 07/01/61
 

 James J. Barta Missouri (E) 09/01/78
 

 Dennis J. Stewart Missouri (W) 11/15/76
 

 Peder K. Ecker South Dakota 07/01/69
 

 J. Douglas Williams, II Alaska 01/02/74
 

 William J. Lasarow California (C) 08/01/73
 

 James R. Dooley California (C) 11/01/76
 

 Barry Russell California (C) 09/01/74
 

 Calvin K. Ashland California (C) 04/28/76
 

 Richard Mednick California (C) 01/05/76
 

 David N. Naugle California (C) 03/01/76
 

 Peter M. Elliott California (C) 01/01/71
 

 Eckhart A. Thompson California (E) 02/16/72
 

 Robert E. Woodward California (E) 07/01/64
 

 Cameron W. Wolfe California (N) 04/01/75
 

 Lloyd King California (N) 12/01/75
 

 Seymour J. Abrahams California (N) 01/20/75
 

 Warren C. Moore California (N) 10/18/65
 

 James W. Meyers California (S) 01/05/76
 

 Jon J. Chinen Hawaii 05/01/76
 

 John L. Peterson Montana 02/18/63
 

 Donal D. Sullivan Oregon 10/01/69
 

 Henry L. Hess Oregon 05/12/58
 

 Samuel J. Steiner Washington (W' 06/23/78
 

 Sidney C. Volinn Washington (W¡ 03/01/64
 

 Robert W. Skidmore Washington (W’ 07/29/74
 

 Patricia A. Clark Colorado 01/25/74
 

 John F. McGrath Colorado 11/01/67
 

 Benjamin E. Franklin Kansas 02/09/76
 

 James A. Pusateri Kansas 12/17/76
 

 Robert L. Berry Oklahoma (W) 12/17/73
 

 Harold L. Mai Wyoming 02/03/71
 

 Rodney R. Steele Alabama (M) 09/01/67
 

 L. Chandler Watson, Jr. Alabama (N) 11/09/61
 

 William E. Johnson, Jr. Alabama (N) 11/15/72
 

 Edwin D. Breland Alabama (N) 05/01/61
 

 George S. Wright Alabama (N) 11/01/61
 

 Gordon B. Kahn Alabama (S) 05/23/74 '
 

 George L. Proctor Florida (M) 12/23/75
 

 Alexander L. Paskay Florida (M) 07/01/63
 

 N. Sanders Sauls Florida (N) 01/01/78
 

 Sidney M. Weaver Florida (S) 04/01/78
 

 Thomas C. Britton Florida (S) 06/24/75
 

 Hugh Robinson, Jr. Georgia (N) 01/15/76
 

 A. David Kahn Georgia (N) 01/01/68
 

 [1]
 

 . Sample Order and Model Rule, Interim Bankruptcy Rules, 11 U.S.C. (West Supp.1983).
 

 [2]
 

 . Article I, § 1; Article II, § 1; Article III, § 1 and Article I, § 6 of the United States Constitution.
 

 [3]
 

 . The doctrine is derived from two Supreme Court cases,
 
 Benner v. Porter,
 
 50 U.S. (9 How.) 235, 246, 13 L.Ed. 119 (1850), and
 
 Freeborn v. Smith,
 
 69 U.S. (2 Wall.) 160, 174, 17 L.Ed. 922 (1865). ("If it comes within the category of retrospective legislation ... we find nothing in the Constitution limiting the power of Congress to amend or correct omissions in previous acts.”).
 

 [4]
 

 . The extension of the bankruptcy judges’ terms of office during the transition period was enacted to avoid the immediate influx of "new, inexperienced judges[, which] would be detrimental to the smooth transition from the current system to the new,” and “to avoid the dismissal of current experienced bankruptcy judges for purely political reasons." H.R.Rep. No. 595, 95th Cong., 1st Sess. 289 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong.
 
 &
 
 Ad.News 5787, 5963, 6245.
 

 The same justifications were behind the extension provided by the 1984 Act.
 
 See
 
 130 Cong. Rec. H7491 (daily ed. June 29, 1984) (remarks of Chairman Rodino regarding the "gap in the 1984 Act");
 

 The conferees agreed that sitting bankruptcy judges should continue in office.
 

 We recognized that the Supreme Court has upheld similar periods.
 
 See Glidden [Co.]
 
 v.
 
 Zdanok,
 
 370 U.S. 530, 547 [82 S.Ct. 1459, 1471, 8 L.Ed.2d 671] (1962) (plurality opinion of Justice Harlan) (“(t)he touchstone of decision in all these cases has been the need to exercise jurisdiction then and there for the transitory period."); see also
 
 Metlakatla Indian Comm. v. Egan,
 
 363 U.S. 555 [80 S.Ct. 1321, 4 L.Ed.2d 1397] (1960);
 
 Freeborn
 
 v.
 
 Smith,
 
 69 U.S. 160 [17 L.Ed. 922] (18[6]5);
 
 Baker v. Morton
 
 [12 Wall. 150], 79 U.S. 150 [20 L.Ed. 262] (1871);
 
 John v. Paullin,
 
 231 U.S. 583 [34 S.Ct. 178, 58 L.Ed. 381] (1913).
 

 The conference report continues the existing transition court so as to allow bankruptcy judges to continue to efficiently do their work. It was the expectation and intention of the Conferees that those persons who were bankruptcy judges continue in those jobs,
 

 and 130 Cong.Rec. S8888 (daily ed. June 29, 1984) (remarks of Chairman Thurmond):
 

 As I am sure my colleagues are aware, our most recent extension of the existing bankruptcy system expired on June 27 of this year. Obviously, the conferees had not agreed on a new bill by that point in time. We have attempted to address this problem by including in title I a final extension of the existing system to the date of enactment of this bill. Our intent is to continue the existing bankruptcy system and its current judges....
 

 [5]
 

 .
 
 E.g.
 
 "The term of office of any bankruptcy judge who was serving on June 20, 1984, and of any bankruptcy judge who is serving on the date of the enactment of this Act is extended to and shall expire on June 27, 1984.” Pub.L. No. 98-325 § 2 (June 20, 1984).
 

 [6]
 

 . Section 114 of the 1984 Act is further evidence of Congress’ intent that the Extension Acts were not to repeal the § 404(b) holdover provisions of the 1978 Act. Section 114 explicitly repealed several provisions of prior law, including § 404 of the 1978 Act. If it had already been repealed by implication or otherwise by the Extension Acts, there would have been no need to repeal it a second time.
 

 [7]
 

 . S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5787, 5903.
 

 *
 

 Appointed U.S. District Judge
 

 **
 

 Appointed FT U.S. Magistrate